[Civ. No. 4958.   Third Appellate District.—October 5, 1934.]

J. H. KERBY, Appellant, v. ELK GROVE UNION HIGH SCHOOL DISTRICT et al., Respondents.

Butler, Van Dyke & Harris for Appellant.

Neil R. McAllister, District Attorney, and Guy P. Johnson, Assistant District Attorney, for Respondents.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered in favor of the defendants pursuant to the provisions of section 629 of the Code of Civil Procedure after a verdict for plaintiff had been returned by a jury in a suit for damages for the alleged negligence of the instructor of physical education, as agent of the school district, resulting in the death of plaintiff's son while he was participating in a basketball game.

Howard Kerby, the son of plaintiff, was regularly enrolled as a pupil in the Elk Grove Union High School. He was sixteen years of age and in apparent perfect physical condition. As such student he was required by the school law to attend and participate in physical education as prescribed by the school. (Sec. 3.735, School Code.) Mr. A. F. Lawrence was the regularly employed instructor of physical training in that school. The game of basketball was one of the sports included in the adopted course of physical education. This game is regularly conducted with a team consisting of five members on either side. At the time of the accident a regular game of basketball was not being played. The students were then employed in what is commonly termed "free play" with some twenty-five students engaged in the activities. A regular game of basketball with five members of the team on either side is conducted under the supervision of a referee according to strict rules which require the blowing of a whistle when the ball goes out of bounds to indicate that it is then a "dead ball". Under such circumstances the referee may designate the player who is to return it to the court. Periods of time were set apart for "free play" basketball to enable all of the students to participate in that activity. This practice was supervised generally by the instructor without adhering to the strict rules of a regular game. It was his duty to also supervise other similar activities which were conducted at the same time at other places requiring him to divide his attention between these several games. In the "free play" game it was not the practice to scrutinize every play of each participant or to blow the whistle when the ball chanced to go out of bounds. The whistle was not blown on such occasions during the game in the course of which the accident occurred. Nor was it conducted under the supervision of a

referee. Howard Kerby, who was participating in this "free play" game, had been previously instructed with regard to the rules thereof and fully understood the game. He was a very ambitious and active student of athletic sports and was considered a proficient basketball player. Regarding the manner in which the accident occurred, Raymond Schmidt, who participated in the game, testified as follows: "We started playing around first . . . just shooting baskets, and so forth; then he (the teacher) asked for volunteers . . . hanging up curtains over the windows. . . . The other boys . . . were playing on the court. . . . Nobody was refereeing. . . . I was just watching the game. . . . I just saw the ball was thrown. . . . I saw the boy (who threw it) but that is about all I knew. I don't know the boy. . . . I think he belonged to the class. . . . He was standing on the west side, . . . just outside the basketball court, that is, where the players stand; if a ball goes out, they throw it in. . . . He was about in the middle of the court, and he was going to throw it to the other end." Apparently Howard Kerby was hit by that ball on his forehead. He was seen to stoop over and rub his forehead. He then left the game and sat upon a bench. The instructor did not observe the incident. Nothing was then said about the accident. The instructor did not know that Howard had been injured. Later he was found unconscious in the dressing room. He was taken to the hospital, where he died the following day. There is no substantial conflict regarding the foregoing statement of facts. This suit for damages was commenced. It was tried with a jury. At the close of plaintiff's evidence, a motion for nonsuit was presented and denied. A verdict was rendered in favor of the plaintiff for the sum of $15,700. On motion of the defendants the court rendered a contrary judgment in favor of the defendants under the provisions of section 629 of the Code of Civil Procedure. From this judgment the plaintiff has appealed.

On appeal it is contended the court erred in rendering judgment contrary to the verdict of the jury for the asserted reason that there is substantial evidence that Howard Kerby died as a result of the negligence of the instructor in failing to properly supervise the game of basketball by absenting

himself from the game and failing to blow a whistle when the ball was knocked out of bounds.

The court has authority to render a judgment contrary to a verdict which has been returned, provided a previous motion for a directed verdict has been denied. (Sec. 629, Code Civ. Proc.; *Perera* v. *Panama-Pacific Int. Exp. Co.*, 179 Cal. 63 [175 Pac. 454]; *Estate of Caldwell*, 216 Cal. 694 [16 Pac. (2d) 139].) The rule regarding the consideration of the evidence authorizing the rendering of judgment notwithstanding the verdict is exactly the same as that which applies to a motion for nonsuit. (*Hirsch* v. *D'Autremont*, 133 Cal. App. 106 [23 Pac. (2d) 1066]; *Estate of Fleming*, 199 Cal. 750 [251 Pac. 637].) A nonsuit may be granted for failure of the plaintiff to prove a sufficient cause only when there is no substantial evidence to support some essential issue upon which the plaintiff's right to recover judgment depends. In determining the existence of substantial evidence for the purpose of passing on a motion for nonsuit, the court must consider all the evidence in the record, together with every inference or presumption which is reasonably deducible therefrom, in a manner most favorable to the plaintiff without regard to the credibility of witnesses. For the purpose of this motion the fact that a conflict of evidence may exist is not to be considered. Every conflict must be resolved in favor of the plaintiff. (9 Cal. Jur. 551, sec. 35; *Wayland* v. *Latham*, 89 Cal. App. 55 [264 Pac. 766]; *Perera* v. *Panama-Pacific Int. Exp. Co.*, supra.)

Governed by the preceding rule of law, we must determine whether the record on appeal contains substantial evidence that Howard Kerby died as a proximate result of the blow from the basketball on his forehead, and whether the instructor, Lawrence, was guilty of negligence in failing to properly supervise the "free play" game, or by neglecting to blow the whistle when the ball went out of bounds, and that these omissions, or either of them, proximately caused or contributed to the injuries sustained by Howard Kerby.

The record contains some expert evidence which justified the court in submitting to the jury the question as to whether the blow from the basketball on the forehead of Howard Kerby aggravated the chronic aneurism of the

cerebral artery with which he was afflicted, causing a rupture of that weakened vessel and his consequent death. It appears conclusively from a post-mortem examination, without conflict of evidence, that Howard Kerby had an aneurism of a cerebral artery. This physical defect was of long standing, having been congenital in its origin, or it was the result of slow development from some former injury. The walls of this artery were found to be greatly weakened by disease, distended and ruptured. A profuse flow of blood from this rupture had covered the entire top and sides of the brain. Unusual blood pressure from violent activity or as a result of the blow from the ball on his forehead caused the rupture of the artery. It does seem probable that the violent activity of participating in the strenuous game of basketball caused the rupture of the artery at the weakened point where the aneurism existed. ██ But even though a latent chronic aneurism of the cerebral artery may have ultimately caused his death without the intervention of violent exercise or traumatic injury, if the blow from the ball did in fact accelerate or aggravate the chronic defect of the artery so as to cause a rupture thereof resulting in death, that blow may be deemed to have been the proximate cause of death so as to create a liability therefor under proper circumstances. (*Knock* v. *Industrial Acc. Com.*, 200 Cal. 456 [253 Pac. 712]; *Quail* v. *Industrial Acc. Com.*, 138 Cal. App. 412 [32 Pac. (2d) 402].) Dr. Gundrum, who attended the patient as his physician a short time before his death, but who did not participate in the post-mortem examination, testified: "The cause of death was rupture of a blood vessel resulting from the injury. . . . Q. Would a blow from a basketball, or could it, in your opinion, cause a hemorrhage which would produce death? A. Yes, it is possible that it could. Q. It is possible that it could, and, in your opinion in this case, it did? A. Yes." Dr. Christman subsequently performed an autopsy in which he discovered that the boy possessed a chronic aneurism of a cerebral artery which he testified had existed for months or even years before the time of his death. There was a rupture of this artery at the point where the aneurism existed causing a "massive hemorrhage over the entire top of the brain and sides". Dr. Gundrum was not present at the time of this autopsy and did not know of the actual

condition of this artery as it was found to exist. It seems quite probable that the violent exertion of the boy in participating in the strenuous game of basketball caused sudden and extreme blood pressure which the weakened walls of the artery were unable to withstand. If that be true, and the supervisor of athletic sports had no knowledge of the student's chronic aneurism and the consequent danger of permitting him to participate in violent sports, no negligence could possibly be predicated on that cause of death. But if the rupture of the artery was in fact caused by the blow of the basketball, and that act of throwing the ball could be charged to the negligence of the agent of the school district, liability might follow, even though the blow merely aggravated or accelerated the physical defect which had previously existed. Since Dr. Gundrum did testify that such a violent blow might reasonably result in a rupture of the artery, it may be said there is substantial evidence to support the implied finding of the jury to the effect that the blow from the ball on the forehead of Howard Kerby did in fact accelerate the blood pressure so as to cause the rupture of the artery and the consequent death of the boy.

This leaves the vital question as to what omission or act on the part of the instructor, Lawrence, contrary to his duty as supervisor of physical training, rendered him guilty of negligence so as to create a liability against the school district. The deceased was a vigorous, robust boy sixteen years of age and weighing 140 pounds. No one knew that he possessed an aneurism or any other physical defect. He had been instructed with relation to the rules of basketball and was considered a proficient player thereof. The instructor was therefore not negligent in permitting him to participate in the game. Basketball is one of the regular sports commonly included in the physical education program of all high schools. At the time the accident occurred the instructor was not neglecting his customary duties. Although his duties required him to superintend several similar activities of the school at that very time, he was actually present in the gymnasium and within sight of the students who were engaged in ''free play'' basketball. He was then covering the windows at the side of the hall to prevent the glaring sunlight from interfering with the game. It was not the custom or the duty of the instructor to referee a ''free

play'' basketball game. It was not the custom or his duty to maintain strict scrutiny of the players or to blow a whistle when the ball went out of bounds in that sort of exercise. A regular game of basketball was not then being played. The presence and supervision of a referee in basketball games do not prevent irregular plays. The referee merely regulates the game and penalizes foul plays. There are certain hazards and unavoidable accidents which occur in all such athletic sports against which a referee may not guard by the greatest degree of caution. Even if the whistle had been blown when the ball went out of bounds at the time this accident occurred, it is not unlikely that it would have been returned in the same manner and that Howard Kerby would have been struck in the forehead by the ball just as he was struck in that unfortunate play. We are unable to say this accident would not have occurred under the enforcement of the strict rules of a regular game of basketball. But it was not a regular game and those rules were not invoked in a ''free play'' game. Ordinary prudence would not necessarily require such rules for the safety of the students. There is no evidence that the instructor omitted to perform any duty at the time of this accident which became the proximate cause thereof. It was a deplorable tragedy and the grievous results thereof invoke the sympathy of all. It was, however, not attributable to the negligence of the instructor and liability of the school district therefore does not follow. We are of the opinion that the court had authority, and properly rendered judgment favorable to the defendants pursuant to the provisions of section 629 of the Code of Civil Procedure, notwithstanding the verdict of the jury.

The judgment and the order are affirmed.

Pullen, P. J., and Plummer, J., concurred.