[Civ. No. 6925. Third Dist. Dec. 30, 1943.]

VERNON MARTIN HOUGH, a Minor, etc., et al., Respondents, v. ORLEANS ELEMENTARY SCHOOL DISTRICT OF THE COUNTY OF HUMBOLDT, Appellant.

Jeremiah R. Scott, District Attorney, and Emery F. Mitchell, Deputy District Attorney, for Appellant.

Irwin T. Quinn for Respondents.

ADAMS, P. J.—Vernon Martin Hough, a minor, through his father, Vernon Hough, acting as guardian ad litem, and said Vernon Hough acting for himself, brought this action against defendant school district for damages for injuries alleged to have been sustained by said minor, and for expenses incurred by his father by reason of the child's injuries.

The complaint alleges that the minor, on December 6, 1939, was a pupil at defendant school; that on the school

148

grounds there was a flag pole at the base of which, on two sides, were braces or supports about three feet high which were attached to the flag pole by a bolt extending through the braces and the pole at a point about thirty-four inches above the ground; that at one end of the bolt there was a washer and a nut, and that the end of the bolt and the nut extended about two and one-half inches out on the side of the brace; that said bolt head did not have any covering or guard "to make same reasonably safe against injury to persons and particularly to pupils playing on the school yard"; and that on the said December 6, 1939, while engaged in a running game the minor plaintiff collided with said protruding bolt and in said collision suffered the injuries set forth. It was further alleged "That said plaintiff received and suffered said injuries by reason of and through the negligence of said School District and said Trustees in carelessly and negligently maintaining said flag pole and braces or supports thereto with said bolts and nuts thereon protruding out from the sides two and one-half inches without having same counter sunk and without any guard or protection of any kind and maintained same in said dangerous manner."

The answer of defendant denied the allegations of the complaint as to negligence and also denied that the minor plaintiff was at the time of his injuries lawfully playing in the school yard; it also alleged contributory negligence on the part of said minor plaintiff.

After trial by the court, sitting without a jury, said court made and filed findings that the allegations of the complaint were true except as to the amount of damages suffered, and that the denials and allegations of the answer were not true. Judgment for the minor plaintiff in the sum of $250, and for his father in the sum of $179, followed. A motion for a new trial, made by defendant, was denied.

On this appeal defendant contends that where, as here, the negligence relied upon relates to the alleged dangerous or defective condition of school property, the law gives no right of action unless it is alleged and shown that the dangerous or defective condition was known by the proper school authorities and they failed to remedy same within a reasonable time; that in this case plaintiff failed either to plead or to prove knowledge or notice; that there is no evidence from which it can be deduced that defendant was negligent in the construction of the flag pole or its supports, and no evidence that

the flag pole as constructed was defective or dangerous; also that the minor plaintiff was guilty of contributory negligence as matter of law. There is a further contention that the trial court erred in its award of damages to the father in that certain claimed items of expense were not properly allowable.

Respondents, replying, make some attempt to show that there was actual notice to the school district of the condition of the flag pole, but argue that even if actual notice was not proven, the law places a duty upon a school district to know the condition of properties over which it has control; they argue that they have made out a case under section 2.801 of the School Code which provides:

"Boards of school trustees, high school boards, junior college boards and boards of education are liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers or employees; provided, however, that a verified claim for damages shall have been presented in writing and filed with the secretary or clerk of the school district within ninety (90) days after such accident has occurred."

Appellant contends that plaintiffs' cause of action may be maintained only under and by virtue of the provisions of Act 5619, Deering's General Laws, 1937, p. 2630, which provides in subdivision 2 thereof:

"Counties, municipalities and *school districts* shall be liable for injuries to *persons and property* resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, *school district,* or other board, officer or person having authority to remedy such condition, *had knowledge or notice of the defective or dangerous condition* of any such street, highway, building, grounds, works or property *and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition."* (Italics ours.)

Appellant relies particularly upon *Boughn* v. *Los Angeles City School District,* 7 Cal.App.2d 347 [46 P.2d 223]. In

that case a pupil aged eleven years, while playing tag in the school lavatory, incurred injuries when she ran into a faucet which extended two and one-half or three inches from the wall. The court held that there was no negligence on the part of the school district in maintaining the faucet extending out from the wall, and said that if it had had a guard or shield the injury might have been more or less. Act 5619, *ante,* was recited, and the court said that the evidence did not sustain the finding of the trial court that defendants "negligently and carelessly maintained and operated the premises . . . and particularly the . . . girls' lavatory thereof in a dangerous and defective manner. . ." It also said, p. 350:

"We have been cited to no case which holds on similar or analogous facts that the maintenance of a faucet which protrudes from two and one-half to three inches from the wall is negligence, and we know of none. Common sense suggests that to hold a school district negligent under such circumstances is to say that the school district must so build and maintain its premises as to preclude possibility of injury. Under such a rule if a kindergarten pupil, who it is fair to assume could not under any circumstances be charged with contributory negligence, ran into a door knob, the school district would be responsible."

Respondents rely particularly upon *Bridge* v. *Board of Education,* 2 Cal.App.2d 398 [38 P.2d 199]; *Ahern* v. *Livermore Union High School District,* 208 Cal. 770 [284 P. 1105]; *Dawson* v. *Tulare Union High School,* 98 Cal.App. 138 [276 P. 424], and *Maede* v. *Oakland High School District,* 212 Cal. 419 [298 P. 987].

In the Bridge case a ten year old pupil while playing on the school grounds was injured by tripping over a cement sprinkler box which extended above the surface of the school grounds. The complaint alleged that the proximate cause of plaintiff's injuries was the negligence of the board of education and its officers and agents in maintaining the box in that condition. After judgment for plaintiff reversal was urged on the ground that the action was maintainable only under the provisions of Act 5619, and that under that act the fact of the existence of the dangerous condition of the property was not the gist of the right of action, but rather the failure to remedy an existing defect, or remove a dangerous condition within a reasonable time after the school au-

thorities had notice that it existed—that an essential element of such right of action is the notice to the proper school authorities and the subsequent failure to remedy the defect.

The court, quoting from the Ahern case, said that Act 5619 was a general act defining the liability of public bodies named therein, to the *general public* and specifying the conditions under which said liability might attach, while the amendment to section 1623 of the Political Code (now section 2.801 of the School Code) was a special act and purported to deal only with the liability of school districts *to the children of the district*, for the negligence of the district or its officers or employees, and that in such a case the provisions of the latter act prevailed over the terms of the general statute. However, the court said that the complaint sufficiently pleaded a case under the act of 1923 (Act No. 5619) and that there was sufficient evidence to support the findings of the court that there was constructive notice to the school district of the existence of the concrete box; that the knowledge of the school principal of the existence for several years of the condition complained of was sufficient to establish constructive notice.

In that case the accident occurred in 1930 when section 2.801 of the School Code provided that a school district was liable for any judgment against it on account of injury *"to any pupil"* arising because of the negligence of the district or its officers or employees; but in 1931 it was amended, and the words "on account of injury to any pupil" were superseded by the words "on account of injury to person or property." (Stats. 1931, ch. 1178.) It is, therefore, no longer a statute designed especially for the protection of pupils, but makes a school district equally liable to the general public; and this change makes particularly pertinent the concurring opinion of Presiding Justice Conrey, who said, p. 403:

"Notwithstanding the decision of the Supreme Court in *Ahern* v. *Livermore Union High School District*, 208 Cal. 770 [284 P. 1105], and unless that decision is the final word on the subject, I am of the opinion that where the negligence relied upon relates to the dangerous or defective condition of public property, there can be no cause of action without the notice or knowledge required under the terms provided in Act No. 5619. It seems to me that the dissenting opinion by Mr. Justice Preston (concurred in by Justices Richards and

Shenk) correctly stated the law when he said that 'a substantive right of action in such case is controlled by Act No. 5619 of the General Law.' But let it be conceded that a right of action for injuries caused to a pupil by reason of negligence in maintaining a defective or otherwise dangerous condition of school property, as well as injuries resulting from other descriptions of negligence, was authorized by section 1623 of the Political. Code and is now authorized by section 2.801 of the School Code. Yet I see no reason why the legislature might not concurrently provide, as it did, that where the injury arises out of a dangerous or defective condition of public property (*any* public property), the right of action shall be limited to cases where there was knowledge or notice such as the Act No. 5619 requires. To hold otherwise, results in giving a preference to one class of litigants. Thereby other litigants, seeking the same relief and for the identical description of injury, are deprived of 'the equal protection of the laws'.''

In the Ahern case, decided prior to the aforesaid amendment of section 2.801, plaintiff, a student in the manual training department of defendant district, while using a school saw to cut a piece of lumber, suffered the loss of two fingers on his right hand. Upon the assumption that the district was negligent in permitting the pupil to use the saw under the conditions shown by the evidence, and that the pupil was not guilty of contributory negligence, a recovery was had. The court there held that section 1623 of the Political Code, in effect when the injury occurred, gave a right of action *to a pupil* who was injured as a result of the negligence of the district or its officers or employees, and that in order to recover it was not necessary for such pupil to meet the requirements of Act 5619, *supra*. But we do not read that decision as holding that, in the absence of knowledge or notice of the defective or dangerous condition of school property, a school district may be held liable for maintaining a dangerous or defective condition of the school building or grounds. Furthermore, much of the reasoning therein is made inapplicable to the case before us, by reason of the subsequent amendment of section 2.801. (Also see ch. 1167 and ch. 1168, Stats. 1931, providing for insurance and both providing that person includes pupil attending public school.)

As for the Dawson case the facts are not comparable. A

school piano which was moved from one room to another as needed, was and had been for more than a year, with knowledge of the district superintendent, kept upon a dolly for convenience in moving. In its position it was unsteady and when used by the pupils would tip; and while plaintiff and other pupils of the school were playing a game as part of their instruction in physical education, the piano fell over backwards crushing plaintiff's ankle. The decision of this court that the district was liable was based on constructive notice by the district of a condition which admittedly had existed for more than a year to the knowledge of the superintendent of the school district; and the case was decided under the provisions of the general liability act (Act 5619, *ante*).

In the Maede case a pupil received injuries to his eyes by reason of the explosion of a pressure gauge in the school laboratory where he was engaged in the performance of an experiment in a vocational training course, and the facts are in no wise comparable to those in the instant case. Also it was decided upon the statute as it read before the amendment of 1931 above mentioned.

In *Goodman* v. *Pasadena City H. S. District*, 4 Cal.App.2d 65 [40 P.2d 854], a minor student in the mechanics shop was injured when a fragment of metal entered his eye while he was watching other students pounding metal. A judgment for plaintiff was reversed. The complaint alleged that defendants negligently maintained and supervised the machine shop, and negligently allowed said minor to work in and about said shop without providing a safe place to work in, and failed to protect him from injury at the hands of his co-students who were working there, etc. While the court said that the action was based on section 2.801 of the School Code (reciting it as amended), it also said, pp. 67-68:

"In the instant case plaintiffs could recover by proving either that there existed in the machine shop *a danger that was known to the authorities,* who neglected to guard the pupils against it, or that there was an unknown peril which by the exercise of reasonable care under the same circumstances a reasonably prudent person would have discovered. The negligence suggested by plaintiffs was the failure to require the pupils to wear goggles in the presence of the possible injury from flying particles of hammered metal. However, the record discloses no substantial evidence that there existed

such danger which was known or ought to have been known to the authorities. 'The law does not make school districts insurers of the safety of the pupils at play or elsewhere, and no liability is enjoined upon a district under the above-mentioned section in the absence of negligence on the part of the district, its officers or employees.' (*Underhill* v. *Alameda Elementary School District*, 133 Cal.App. 733 [24 P.2d 849, 851] ; *Ellis* v. *Burns Valley School District*, 128 Cal. App. 550 [18 P.2d 79].)'' (Italics ours.)

In *Ellis* v. *Burns Valley School District*, above cited, plaintiff was injured when, during a game on the school grounds, which game was under the supervision of the school, he collided with a larger and heavier pupil. This court held that no cause of action was made out, and said (p. 555) that ''One may not be held responsible for those consequences following from an act which could not have been anticipated by a reasonably prudent person.''

In *Hack* v. *Sacramento City Junior College District*, 131 Cal.App. 444 [21 P.2d 477], plaintiff, a pupil aged seventeen years, was injured when two other pupils, who, acting under instructions from their teacher of stagecraft, were attempting to move wooden frames covered with canvas from a stack, allowed them to fall striking the girl. Judgment for plaintiff was reversed, the court saying that the findings of negligence were not supported by the evidence. The opinion states, pages 446-447:

''As recited above, the trial court found that the stack of flats was not secured to the wall by means of a rope or otherwise. *There was neither allegation nor proof that in the exercise of proper care such flats should be stored in any particular manner or that the stacks should be secured with a rope or otherwise.* (*Manwell* v. *Durst*, 178 Cal. 752 [174 P. 881, 1 A.L.R. 669].) However, there was no evidence to the effect that however the flats were stacked or piled that they fell before being pulled down by Hunt and Thorne [the pupils].

''The trial court also found that Hunt and Thorne were physically incapable of, and inexperienced in, handling said flats. There was no evidence that either Hunt or Thorne, acting alone, could not lift or carry a flat weighing twenty-five pounds. There was no evidence that either Hunt or Thorne was inexperienced in handling said flats or that any

experience was necessary. Again, there was no evidence that there was any danger in handling flats and, if so, that the instructor knew of such fact or that Hunt and Thorne did not know such fact. (*Manwell* v. *Durst, supra.*)'' (Italics ours.)

The conclusion was that there was no evidence of negligence on the part of any officer or employee of defendant.

■ In the instant case, the allegations of the complaint and the finding of the court are that plaintiff received his injuries by reason of the negligence of the district in carelessly and negligently maintaining the flag pole and braces with said bolts and nuts protruding without having same countersunk and without a guard or protection of any kind. The case as stated is brought under the provisions of Act 5619, to wit: for injuries sustained due to the defective or dangerous condition of school property; and we are of the opinion that it was necessary for plaintiffs to allege and prove knowledge on the part of the district—either actual or constructive—and failure to remedy the condition. Also we think it was incumbent upon plaintiff to show that the condition complained of was actually a defective or dangerous one. The mere fact that the minor plaintiff ran into the flag pole and was injured is not evidence that it was dangerous. Obviously it was not intended as something to be run into. Also it was incumbent upon plaintiff to produce some evidence as to the proper, workmanlike and usual method of using and maintaining a flag pole and bolts for the purpose for which they were here used if the condition complained of was in fact defective.

■ School authorities are required to use only ordinary care; and it cannot be said that the district here reasonably should have anticipated that children might run into so conspicuous an object as the flag pole. It is said that use of defective property only in its ordinary, usual and customary use, and not from unusual and unauthorized use casts liability (*Woodman* v. *Hemet Union High School District,* 136 Cal.App. 544, 553 [29 P.2d 257].) Also the district was not under obligation to anticipate what was unlikely to happen. No accidents involving the flag pole had previously happened.

The opinion of the trial court states that passive negligence of the district was relied upon, and not any overt act of defendant. It recites that a faucet in the lavatory, a protrud-

ing door knob, a rain washed hole or a drinking fountain are not defective conditions; but that if a rain washed hole had been created by some act of the district, *or if the district had knowledge and failed to correct it,* it would create a dangerous condition, etc. But the court did not say or find that the protruding bolt was a defective or dangerous condition or that the district had knowledge of its condition.

Respondents attempt in their brief to show that there was actual knowledge. They rely upon testimony showing that some time in the summer or fall of 1939, and prior to the accident, one Salstrom was employed to put a new rope on the flag pole, and that he then saw the protruding bolts, and then tightened them. But Salstrom said that he said nothing about them to the trustees. Reliance is also placed by respondents upon the testimony of the teacher of the school, contending that she had had exact knowledge of the condition of the flag pole for three years. But counsel for respondents draws an unwarranted conclusion from the testimony of this witness. She said only, when shown pictures of the pole, that she "supposed" she had seen the protruding bolt before the accident (which was in December, 1939); that she was then (at the time of the trial, November 12, 1942) teaching her third year in the school, and that the bolts had not been changed to her knowledge. Her testimony showed neither exact knowledge of the protruding bolt, nor that it had been in the same condition for three years prior to the accident. The foregoing evidence shows neither actual nor constructive notice on the part of the district that the bolt protruded or that it was dangerous; and, as hereinbefore stated, there was neither allegation nor finding of knowledge by the district. Furthermore, the evidence fails to show that the condition of the flag pole was a dangerous or defective one. The photographs of the flag pole introduced by plaintiffs show that what are referred to by respondents as braces for same were, in fact, not braces, but two timbers set in the ground, between which the pole itself was slung, the two bolts through the timbers and the pole holding the pole in place, and permitting it to be raised and lowered when necessary.

Plaintiffs offered no evidence to show that such construction was improper or defective or that the countersinking of the ends of such bolts was the usual, customary or practicable way to use them. And as to the allegation of plaintiffs

that the ends of the bolts did not have any covering or other device to guard them, it may be said, as was said in the Boughn case, *supra,* regarding the faucet there complained of, that if it had ''had a guard or shield, the injury might have been more or less, depending on the nature of the guard or shield and the manner in which contact with the same occurred.''

Since we have concluded that for the reasons above stated the judgment of the trial court must be reversed, it is unnecessary to pass upon the question of whether or not there was contributory negligence on the part of the minor plaintiff. However, his own testimony that while he and another boy were throwing a football about, after he had been dismissed from school for the day, he ran into the flag pole, that he knew it was there and that he ''kind of seen'' it when he ran for the ball, but did not think he was going to hit it so kept on going, would have justified a finding of contributory negligence on his part. He was nearly eleven years old and a child above the average in intelligence.

The judgment is reversed.

Thompson, J., concurred.