[Sac. No. 6268.   In Bank.   Feb. 10, 1953.]

WILLIAM H. PIRKLE et al., Respondents, v. OAKDALE UNION GRAMMAR SCHOOL DISTRICT et al., Appellants.

Vernon F. Gant, Frederick W. Reyland, Jr., County Counsel, and William R. Mitchell, Deputy County Counsel, for Appellants.

C. Ray Robinson, Margaret A. Flynn, James A. Cobey and William B. Boone, for Respondents.

EDMONDS, J.—William H. Pirkle, an eighth grade student at the Oakdale Union Grammar School, sustained injuries while playing in a game of touch football. The chief ground relied upon by the school district, B. W. Gripenstraw, its

principal, and Jules Perrin, the instructor in physical education, for a reversal of the judgment against them and orders denying certain motions is that there is no evidence upon which liability for damages legally may be based.

The jury, considering the evidence in the light most favorable to the plaintiffs, and giving them the benefit of all inferences reasonably to be drawn from it, might have found the following facts: During noon recess periods, the boys in the seventh and eighth grades were permitted to engage in "free play" activities. The games at such times included touch football, in which a "tackle" is accomplished by touching the ball carrier with both hands. Bodily contact is limited to a shoulder or body block, with both the blocker's feet on the ground. When properly regulated, the game is not rough.

Free play games were not a part of the required physical education program, and the boys participated in them only if they elected to do so. A team representing the seventh grade competed against another from the eighth grade. One boy from each grade was captain and chose the players for his team. As was customary in free play games, the participants were not selected according to age, size, or weight. As a consequence the players ranged in weight from 85 to 190 pounds.

At the time of the accident, William was a member of the eighth grade team. He was 13 years, 4 months of age, 5 feet, 4 inches tall, and weighed approximately 97 pounds. During the game he blocked Jack Perkins, a seventh grade student weighing 145 pounds, who was 5 feet, 10 inches tall, and 14½ years old. William was struck in the abdomen by Jack's knee. He remained in the game for the next two or three plays and then went to the sideline, where he lay down on a bench.

He was soon sent to a first aid room where Gripenstraw had him lie down and covered him with a blanket. Near the close of the school day, Perrin came to see him. When William passed urine at Perrin's suggestion, it was observed that the urine contained blood. Perrin then took William home. This was about two hours after the accident. William's spleen and left kidney were removed about five hours later.

John Pirkle, the boy's father, sued for damages in the amount of his expenditures for William's medical care and, as guardian *ad litem* for William, for damages for the injuries the boy sustained. The theory of the complaint was that the defendants negligently failed properly to supervise

the game, and that Gripenstraw and Perrin carelessly neglected to give William prompt medical attention. Named as defendants were Perrin, Gripenstraw, the school district, and the members of its board of trustees. The demurrer of the trustees was sustained and the action dismissed as to them.

During the trial, the motions of the defendants for a nonsuit and for a directed verdict were denied. The jury returned a verdict for William of $7,500 and awarded the father $800. Motions by the defendants for judgment notwithstanding the verdict and for a new trial were denied. The appeal is from the judgment entered upon the verdict and from an order denying the motions for judgment notwithstanding the verdict.

The principal ground relied upon in challenging the judgment is that the evidence is not sufficient to sustain the verdict. It is argued that there is no evidence justifying the jury's implied finding that the defendants were negligent in supervising the game, or that William sustained injury because of a negligent failure to provide prompt medical attention.

■ The standard of care required of an officer or employee of a public school is that which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances. (*Bellman* v. *San Francisco H. S. Dist.*, 11 Cal.2d 576, 582 [81 P.2d 894]; *Hough* v. *Orleans E. S. Dist.*, 62 Cal.App.2d 146, 155 [144 P.2d 383]; *Buzzard* v. *East Lake School Dist.*, 34 Cal.App.2d 316, 321 [93 P.2d 233]; *Ellis* v. *Burns Valley School Dist.*, 128 Cal.App. 550, 553 [18 P.2d 79].) The plaintiffs take the position that the jury reasonably might have found that the defendants failed to maintain proper supervisorial control of the manner in which the game was played.

In their physical education classes, the boys received instruction in the rules of touch football, including demonstrations of the correct methods of blocking and tackling. They were skilled in the game, having played it many times previously. Immediately prior to the contest, they again were instructed that blocking was to be done with both feet on the ground, and were warned that rough play would not be tolerated. Perrin, the physical education instructor, acted as referee and Hass, his assistant, as head linesman. The injury occurred in the course of a play executed in accordance with the rules of the game; no charge is made that any of

the players conducted himself improperly. In short, there is no evidence sufficient to predicate negligence upon a failure to supervise the playing of the game.

The Pirkles assert that the defendants were negligent in the manner in which the players were segregated. They contend that the jury reasonably might have found that the defendants should not have allowed boys of such different weights to play in the game in which William was injured. Specifically, they argue, the players should have been segregated according to an "exponent chart" which was used in connection with the required physical education programs and interschool games.

Physical education programs in the elementary schools are an accepted part of the curriculum. (Ed. Code, § 8252; *Underhill* v. *Alameda E. S. Dist.*, 133 Cal.App. 733, 735 [24 P.2d 849].) A recognized and desirable part of such programs consists of organized free play games of the type here concerned. (*Kerby* v. *Elk Grove Union H. S. Dist.*, 1 Cal.App. 2d 246, 248 [36 P.2d 431].) However, the difficulty in administering such activity is well illustrated by the evidence in the present case. To fill the teams, 22 boys must be selected from those desiring to play. Such selection must be made in a manner permitting the smaller boys to compete with safety and some degree of success, and yet without denying to the larger boys opportunity to participate. If the classification is made too narrow and rigid, particularly in the smaller schools, a sufficient number of players will not be available to make up the teams.

■ The record shows that the selection of players for free play games according to grades is a convenient and practical method of segregation. That such method is utilized throughout the state is competent evidence of the reasonableness of its use by the defendants in the present case. (*Perumean* v. *Wills*, 8 Cal.2d 578, 583 [67 P.2d 96].) ■ All the evidence is to the effect that touch football is not a dangerous or rough game. Several witnesses testified that, although the practice of matching the seventh against the eighth grade had been followed extensively throughout the county, they knew of no serious injury prior to the one to Pirkle. From this evidence, it must be concluded that the method of segregation employed by the defendants was a reasonable one.

■ This determination is not affected by the fact that so-called "exponent charts" were used in connection with

interscholastic contests and in the required physical education periods. Such charts classify the pupils according to certain combinations of age, height, and weight. According to the evidence, apart from the fact that they are useful only where there is a large group of boys to draw from, the charts are designed primarily to present equal opportunities of competition, and, if at all, only partially for the safety of the participants. However, the uncontradicted testimony of school officials using the chart is to the effect that the classifications are broad enough to permit a variation in weights at least as great as that involved in the present case. In addition, players in the lower classifications are permitted to compete in the higher ones if they possess sufficient skill. In short, the evidence fails to establish such charts as a standard of care, the failure to observe which may be deemed negligence.

This conclusion is not inconsistent with the holding in *Bellman* v. *San Francisco H. S. Dist.*, 11 Cal.2d 576 [81 P.2d 894]. In the Bellman case, a high school girl was injured during a required physical education period while attempting to perform a tumbling exercise. There was evidence from which the jury reasonably might have found that the exercise was inherently dangerous and that its performance required, in addition to physical strength and agility, a proper mental attitude. At the time she attempted the exercise, the girl was suffering from a knee injury, and she was taking part in the class against her wishes. The record also showed that the physical instructor in charge knew that she had failed in prior attempts to perform the trick. It was held that liability might be imposed only where the evidence showed a failure on the part of the school officials to use ordinary care. "What is ordinary care depends upon the circumstances of each particular case and is to be determined as a fact with reference to the situation and knowledge of the parties." (P. 582.) A majority of the court joined in the conclusion that those facts justified the submission of the issue of negligence to the jury. Three justices dissented upon the ground that, even under the unusual circumstances presented in that case, the evidence would not reasonably support a finding of negligence.

The facts of the present case, however, are readily distinguishable. ▪ The activity here involved was not an inherently dangerous one. The boys were selected according to their skill and by a reasonable means of classification. They

were properly instructed, experienced, and proficient, and they participated in the game only if they chose to do so. Under such circumstances, there is no legal basis for a finding of negligence.

Nor is there merit in the contention that liability may be predicated upon a failure to provide prompt medical attention. Plaintiffs' medical expert, the sole witness to testify on this point, stated that a layman could not reasonably have been expected to discover the nature of the injury sooner and, in any event, no injury resulted to the boy from the delay.

The evidence being insufficient to sustain the verdict and judgment, the defendants' motions for judgment notwithstanding the verdict should have been granted. Under such circumstances, this court may order judgment to be so entered. (Code Civ. Proc., § 629; *Jordan* v. *Guerra*, 23 Cal.2d 469, 472 [144 P.2d 349]; *Johnson* v. *Sacramento Northern Ry.*, 54 Cal.App.2d 528, 543 [129 P.2d 503].)

The judgment and the order denying the motions for judgment notwithstanding the verdict are reversed and the trial court is directed to enter its order granting said motions.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority of this court has again invaded the realm of fact finding, and in violation of the settled rule that facts must be determined in the trial court, has found and determined the issues of fact contrary to the trier of fact— the jury in this case—and the trial judge who denied motions for a nonsuit, directed verdict, judgment notwithstanding the verdict and a new trial. In so holding, this court again denies litigants the right to a jury trial on issues of fact in a case where a trial by jury is admittedly a matter of right under the Constitution and laws of this state.

What was the ultimate issue of fact to be determined in this case? It was whether or not the conduct of the individual defendants was that of a reasonably prudent person under like circumstances. If the conduct was not such, he was negligent, and if such negligent conduct was a proximate cause of the injuries suffered by plaintiff, liability was established.

It must be remembered that a jury and trial judge heard the evidence in this case and concluded that the conduct of

either Gripenstraw or Perrin or both of them was not that of a reasonably prudent person and that either or both of them was or were negligent. It cannot be denied that this ultimate fact was so determined.

The members of the jury and trial judge are presumed to have "reasonable minds." They saw the participants and saw and heard the witnesses and must have concluded that a reasonably prudent person would not have permitted boys ranging in weight from 85 to 190 pounds to engage in a game of touch football under the circumstances there depicted. These fact finders, with "reasonable minds," may have felt that a reasonably prudent person in charge of the playground would have applied the "exponent chart" which was admitted to be *"partially for the safety of the participants"* in such a game. These fact finders, with "reasonable minds," may have disbelieved the witnesses who testified that touch football, when played as described by them, would not endanger the life or limb of the participants. In short, these fact finders with "reasonable minds," on whom the Constitution and law of this state places the responsibility of determining issues of fact, concluded from the evidence that a reasonably prudent person would not have permitted little Willie Pirkle, 13 years, 4 months of age, 5 feet, 4 inches tall and weighing 97 pounds to play in a game of touch football with big, overgrown Jackie Perkins, 14 years, 6 months of age, 5 feet, 10 inches tall and weighing 145 pounds, and that in so doing Mr. Gripenstraw or Mr. Perrin or both were guilty of negligence.

Now, a majority of this court says that this jury and this trial judge did not possess "reasonable minds"; that they are not entitled to the benefit of the presumption which the law has bestowed upon them—that they possess "reasonable minds"; and that the constitutional mandate and statutory provisions relating to the function of a jury and a trial judge are of no force or effect whatsoever as this court arrogates to itself both the fact finding and law making powers.

No evidence of negligence, the majority says. But what is the test for determining when negligence is a question of fact or a question of law? The only test mentioned in the lawbooks is the so called "reasonable minds" test. That is, where the evidence is such that "reasonable minds" cannot differ as to the conclusion to be reached, it is a question of law. The majority does not mention this test or any other test. It simply declares arbitrarily, contrary to the conclusion

reached by the jury and trial judge, that there was "no negligence." But suppose little Willie Pirkle was only 8 years of age, 4 feet tall and weighed only 60 pounds and big, overgrown Jackie Perkins was 16 years of age, 6 feet tall and weighed 200 pounds, and the record was the same in other respects, what would the majority say? If it would find there was negligence in such a case, where should the line be drawn? It seems only reasonable to me that if this court intends to overthrow the "reasonable minds" test as it has done in this case, it should lay down some other test or standard for determining when the issue of negligence is one of fact or law. The present decision places the determination of this issue within the arbitrary power of four members of this court without regard to any test, standard or rule to guide either this court or any lower court in future cases. Thus, the reason of the law is superseded by the arbitrary rule of four men. Obviously this rule will change from time to time as the philosophy of the majority changes.

The decision which the majority of this court has rendered in this case resolving an issue of fact contrary to the conclusion reached by the jury and the trial judge is more far-reaching than its effect upon the law applicable to this particular case. In effect, it is an attack upon the jury system. By this decision the majority of this court says to the people of California, You can write into your Constitution and statutes that litigants in cases of this character are entitled to a trial by jury, but regardless of the determination by the jury of the factual issues, a majority of this court will have the last say as to the determination of the factual issues. This means that when a majority of this court desires to overthrow the factual determination by a jury it may do so regardless of the nature and character of the evidence supporting such determination.

The volumes of the reported decisions of this court contain the record of the Justices of this court who have expressed their views on the effect of factual determinations by juries and it may be gleaned therefrom that some of those Justices have not been in accord with the constitutional and statutory provisions which make the jury system a part of our system of jurisprudence. While the validity of these provisions has been settled beyond the realm of successful attack, the operation of the system is greatly restricted and rendered ineffective by decisions such as this, which are becoming more numerous as the decisions of the present court are rendered.

By such decisions a bare majority of this court may snatch from a litigant his property and rights gained through the lawful process of a jury trial, thereby depriving such litigant of one of his most valuable, fundamental, constitutional rights, guaranteed by both the Constitution of the United States and the Constitution of California. Such is the situation in the case at bar. As one who believes in preserving the American way of life and upholding and supporting the Constitutions which guarantee the continuance of that way of life, I cannot refrain from expressing my unqualified disapproval of this decision and those of similar import which is now the trend of decision by the majority of this court.

Because I believe in upholding the constitutional guarantee of the right of trial by jury and the statutory law of this state which confers upon a jury and trial judge the exclusive power of determining the facts in a case such as this, and because it appears beyond question that an honest evaluation of the record in this case must necessarily resolve the issue of negligence here to be one of fact which must be determined by the jury and trial judge in accordance with the process of law as defined in our Constitution and statutes, I would affirm the judgment in this case.

Respondents' petition for a rehearing was denied March 9, 1953. Carter, J., was of the opinion that the petition should be granted.