[Civ. No. 12191.   First Dist., Div. One.   Jan. 28, 1943.]

THOMAS CHARONNAT, a Minor, etc., Respondent, v. SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Appellant.

John J. O'Toole, City Attorney, Walter A. Dold, Chief Deputy City Attorney, and Irving G. Breyer for Appellant.

Ben K. Lerer, Albert Picard and Francis McCarty for Respondent.

KNIGHT, J.—Plaintiff, an elementary school student, through his guardian ad litem, brought this action under section 2.801 of the School Code to recover damages alleged to have been sustained as a result of having his leg broken by another student during the noon hour in the school yard of the Pacific Heights Grammar School. The action was tried by the court sitting without a jury, and the court found in plaintiff's favor, awarding him judgment for $2,500, from which judgment the defendant school district appeals.

The accident happened on February 24, 1938. The school yard of the Pacific Heights School where plaintiff was injured was approximately 180 feet long and 120 to 130 feet wide, and during the time in question some 100 to 150 students were playing in various parts of the yard. The vice-principal of the school was assigned to supervise the play in the yard from 12 to 1 o'clock, and was the only teacher on duty in that yard at that time. Plaintiff, then aged 11 years, was playing with another student named Harris, around the base of a flagpole in the yard. The base was 3 or 4 feet high, and 7 or 8 feet in diameter. Another student, Keith Thomas, about the same age as plaintiff, came up to the base of the flagpole and told plaintiff to let him get on the base. Plaintiff refused, and Thomas pushed plaintiff off. Plaintiff got back and pushed Thomas off; Thomas then kicked plaintiff off, and an exchange of kicks and blows took place between the two boys. Plaintiff then went over to an iron picket fence about four feet away from the flagpole base and was jumping up and down on the fence when Thomas came over, grabbed plaintiff's leg and twisted it until it broke. During this entire altercation, which lasted about five minutes, the

boys were talking "above a normal tone" and when Thomas began twisting plaintiff's leg plaintiff screamed as loud as he could, three or four times, telling Thomas not to twist his leg, that he would break it. Another boy, who was about ten feet away, testified that plaintiff yelled loudly, "Stop, stop, you are going to break my leg"—"Ouch, you are hurting me." However, Thomas kept on twisting the leg until the shin bone was broken; and plaintiff fell to the ground crying and yelling "Oh, my leg." The vice-principal testified that on account of the usual commotion and noise on the school ground she did not hear or see any part of the altercation between the two boys; that her attention was first attracted when she heard a loud scream, and the Harris boy came up to her and told her that the Thomas boy had twisted plaintiff's leg; that thereupon she went over to the flagpole and found plaintiff grasping the iron fence; that he was crying hysterically and shrieking "My leg is broken"; whereupon he was assisted into the classroom by two larger boys.

There is a conflict in the testimony as to how far away from the two boys the vice-principal was standing while the quarrel was going on. The testimony on the part of plaintiff shows she was at all times in close proximity to the boys—from 15 to 20 feet away; whereas she testified that she first took up her position near the flagpole and then walked over to another area and was about 40 or 50 feet distant from plaintiff when she heard the loud scream. Prior to the day in question there had been quarrels and fights between boys on the school grounds; and on the day plaintiff was injured there were present at the school some 19 or 20 teachers available for supervision assignment, but the vice-principal alone was assigned to that duty in the boys' yard, which duty she had been performing every school day for some time.

Section 2.801 of the School Code provides: "Boards of school trustees, high school boards, junior college boards and boards of education are liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers or employees. . . . " Section 5.543 of said code provides: "Every teacher in the public schools must hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds or during recess." And section III, subdivision (d) of the rules and regulations of the State Board of Education provides: "Where

special playground supervision is not provided, teachers shall supervise the conduct and direct the play of the pupils of their classes in the school or on the school grounds during intermissions and before and after school. . . .''

In the present case the trial court found that the teacher in charge of the yard was in close proximity to the place where the argument started and the injuries were inflicted, and would and should have prevented the injuries if she had used ''ordinary, or any, reasonable care or diligence to observe the conduct of said plaintiff, said Keith Thomas, and the children under her supervision''; that ''by and through the carelessness and negligence of said defendant, the said plaintiff and said other children in said school were carelessly and negligently, improperly and insufficiently cared for and watched''; and that ''the injuries so received by the said plaintiff were caused by the negligent supervision by said defendant over the said plaintiff and the other children in the said school yard of said Pacific Heights School at the time and place hereinbefore mentioned, and that not sufficient teachers or other employees of the defendant were present in the said school yard during the time of said accident or at any of the times between the hour of twelve o'clock noon and until after the occurrence of said accident.'' The court also found that plaintiff was not guilty of contributory negligence.

Appellant contends that to hold it liable under the facts of the present case is to hold in effect that the school district is an insurer of the safety of its pupils, because, appellant contends, there is an entire absence of evidence in the record showing any negligence on the part of the school district, its officers or employees. This contention is based upon the argument that by assigning one teacher to yard duty it had provided proper supervision, and because the injury in question could not have been anticipated by that teacher, she was not negligent in her supervision. Appellant argues also that the type of school yard supervision employed in the present case, of having a vice-principal in the boys' yard supervising approximately 150 pupils, was the usual school yard supervision that had been in practice for years and is the practice now, and that no matter how many teachers might have been assigned to the yard supervising pupils, an injury such as occurred here could still not have been prevented.

Obviously, however, the questions of whether defendant provided proper supervision under the circumstances, and

whether the supervisor was negligent, were questions of fact for the trial court; and we are of the opinion that its findings thereon are sustained by substantial evidence. In part the evidence shows that the yard was large, and was occupied by some 150 boys of various ages, and many games were going on; and the trial court may well have concluded that it was negligence on the part of the school authorities to assign only one teacher to "hold pupils to a strict account for their conduct" (§ 5.543, Sch. Code), and that if more than one teacher had been assigned to yard duty on the day in question, one of them would have seen or heard the fight going on at the flagpole base and stopped it before it resulted in serious injury. As said by the court in *Forgnone* v. *Salvador U. E. School Dist.*, 41 Cal.App.2d 423 [106 P.2d 932], " . . . the purpose of the law requiring supervision of pupils on the playgrounds and on the school property during school hours is to regulate their conduct so as to prevent *disorderly and dangerous* practices which are likely to result in physiscal injury to immature scholars under their custody." (Italics ours.) And in *Buzzard* v. *East Lake School Dist.*, 34 Cal.App. 2d 316 [93 P.2d 233], it was held that improper supervision of pupils on the school grounds may create a liability on the part of the school district for injuries received by one pupil on account of the recklessness of a fellow student while they were engaged in recreation on the premises during an intermission.

Nor is it necessary that the very injury which occurred must have been foreseeable by the school authorities or the yard supervisor in order to establish that their failure to provide adequate protection constituted negligence. "Their negligence is established if a reasonably prudent person would foresee that injuries of the same general type would be likely to happen in the absence of such safeguards." (*Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594 [110 P.2d 1044].) It is not unreasonable to anticipate that where as here boys are at play, and there are arguments and fights, that the fighting may result in serious injury; and under such circumstances the law imposes the duty on the school authorities to provide sufficient supervision so that the fighting may be stopped before serious injury results. Of course, the law does not make the school district an insurer of the safety of the pupils; but the district is liable under said section 2.801 for its negligence, or for the negligence of its officers or employees; and

here, as above pointed out, it would seem that had the district provided more than one supervisor for the yard the fight might have been stopped before serious injury resulted; or had the supervisor who was standing in close proximity to the plaintiff and Thomas, been using due care, she would have seen or heard the fighting in time to have avoided serious injury.

Appellant also contends that it is not liable for the negligence or wilful misconduct of a pupil, and cites a number of cases to support this contention. However, we do not deem those cases controlling here. As the court said in *Buzzard* v. *East Lake School Dist., supra,* in dealing with practically the same group of cases: "Each of the cases relied on by the appellant was properly determined upon the particular facts involved therein. They may be readily distinguished from the circumstances upon which the present case was decided. Most of the last cited cases were founded on claims for injuries sustained by pupils on account of the conduct of other students engaged in playing games on the school premises, over which the supervisors of sports had no control, and which acts could not have been reasonably anticipated. None of those cases present accidents which were the result of negligent omissions to regulate the conduct of pupils on the playgrounds with respect to known acts or practice of pupils from which, by the exercise of reasonable prudence the school authorities should have anticipated that injuries were likely to follow." This language applies also to the case mainly relied on by appellant, *Reithardt* v. *Board of Education,* 43 Cal.App.2d 629 [111 P.2d 440]. In that case it was held that the accident happened at a time when no supervision was required, and that the defendants could not have reasonably anticipated that anyone could be injured under the circumstances there present; that no danger was present except in such an instance as occurred—the wilful and deliberate act of another student. In the present case the evidence is legally sufficient to support the inference that there was a negligent omission on the part of the defendant to provide adequate supervision of the conduct of the pupils, and that had the supervisor seen the fighting some serious injury would have been anticipated.

Appellant also argues that even though it be held that there was some negligence on the part of the school district, it was not the proximate cause of the injury to respondent; that the proximate cause of such injury was the intervening

act of plaintiff himself, or the intervening act of the fellow student, or a combination of both. The trial court found, however, on sufficient evidence that plaintiff was not guilty of any negligence contributing to his injury; and the mere fact that some third party agency is the immediate actor in causing the injury is not of itself enough to absolve the school district from liability if it can be determined that it was negligent in failing to provide adequate supervision. (*Taylor* v. *Oakland Scavenger Co., supra; Forgnone* v. *Salvador U. E. School Dist., supra; Buzzard* v. *East Lake School Dist., supra.*)

From the foregoing it will be seen that in the final analysis this is a factual case; and since the evidence, although conflicting in some important respects, is legally sufficient to support the trial court's findings on the issues of negligence, it is beyond the power of this court to interfere therewith.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1943. Traynor, J., voted for a hearing.