[Civ. No. 16569. First Dist., Div. One. Feb. 27, 1956.]

LEONARD LILIENTHAL, a Minor, etc. et al., Appellants, v. THE SAN LEANDRO UNIFIED SCHOOL DISTRICT OF ALAMEDA COUNTY, Respondent.

M. F. Hallmark and Paul E. Deadrich for Appellants.

Bronson, Bronson & McKinnon for Respondent.

WOOD (Fred B.), J.—Plaintiff, while attending a metal-craft class at the high school conducted by the defendant district, was injured by a sharp instrument[1] thrown by a fellow student. In this action for damages, verdict was directed for the defendant and plaintiff has appealed.

He claims there was evidence sufficient to support a finding that the classroom teacher was negligent. He invokes section 1007 of the Education Code: "The governing board of any school district is liable . . . for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers, or employees . . ."

The accident occurred during a class session on Friday during the first week of school. The class had spent that

---

[1]Made by a previous class and kept in a bin with other materials for class use, it was 6 or 7 inches long, of black tool steel, octagonal in cross-section, half inch in thickness, hammered flat, curved and to a point at one end. It resembled a pencil. Some referred to it as a knife.

week on safety instruction. The students were instructed ''how to handle equipment, the machinery and materials that they were to work with and proper regard for safety.'' They had been specifically instructed to be careful with the tools and not to throw anything.

On the day of the accident the class assembled in the shoproom, but because of noise from partition construction work, the teacher, after about 10 minutes, took them outside on the lawn.

While in the shoproom Tom Accatino, one of the students, saw a ''home made knife'' in the sheet metal bin. The bin was for the purpose of storing short, small, odd pieces of metal, including pieces which had been used before but have a ''certain salvage value.'' Tom picked up the knife and held it while he was in the shoproom. He did not think he took it outside. He thought he gave it to someone else while he was inside.

When the class reassembled outside on the lawn the students sat in a semicircle around the teacher. There were 28 boys in the class. The closest student was about 10 feet from the teacher. The farthest were 20 to 25 feet away. Plaintiff sat at about the middle of the semicircle, about 15 to 20 feet from the teacher. The teacher was standing and the boys were either lying or sitting on the lawn facing him. He testified that he arranged the boys in a semicircle more or less in front of him, and that ''they were facing me, some more or less from the side but all not, naturally, right directly in front of me, but *all plainly visible* . . . It is possible that some of them had their sides turned to me because they were in various positions on the lawn.'' (Emphasis added.)

There was evidence that plaintiff was facing the teacher and that Chris Canazero, who threw the knife, was sitting between plaintiff and the teacher with his back to the teacher facing the plaintiff.

The class, engaged in reviewing a written examination on safety, had been in session on the lawn about half an hour when the accident happened. In the course of this review, the teacher would read a question and the correct answer and then look up from his paper to see if the students had any questions. He testified that at the time he heard plaintiff's outcry, it had been ''a moment or two'' since he had looked up. He stated in his deposition that he did not recall how long before the outcry he had last looked up at the class.

He reconciled these two responses by saying in answer to the question how long prior to the outcry he had looked up at the class: ''I couldn't answer it precisely. I just answered your question, a moment or two, meaning in general, about that, and assuming that one question would not take more than a moment or two, or a minute, probably, to cover, I would be naturally looking up so I couldn't say in terms of minutes or seconds, but in general, it wouldn't be very long, that is, by not very long, I mean a few moments.'' The class was orderly.

Before the accident happened, some of the boys had been flipping the instrument into the ground. Plaintiff testified that he had seen Tom Accatino flipping the knife four or five times. He saw no one else flipping the knife. Tom testified that he had seen three or four boys throwing the knife around. He named Chris Canazero as one of them. Student Jack Golden saw Chris Canazero throwing the knife into the grass two or three times before it hit plaintiff's drawing board and bounced into the latter's eye.

The teacher testified he did not see the knife before the accident and that his first knowledge that anything had happened was when he heard plaintiff's outcry. The knife, when it was being flipped on the lawn, made practically no noise.

We think there was evidence for the jury on the question whether the teacher knew or should have known of the knife throwing. The evidence tending to prove that the knife throwing had been going on for some 30 minutes plus the teacher's own testimony that the students were facing him and were all plainly visible and that he looked up frequently and viewed them to give them a chance to ask questions, would, we think, warrant the jury to infer that he did observe these knife throwing activities (if the jury disbelieved his testimony that he did not see what was going on in front of him) or that he was inattentive and careless in failing to observe such an activity which was going on over such an extended period of time.

In such a case as this the ''question is whether the school officials used the same care as persons of ordinary prudence, charged with the duty of carrying on the public school system, would use under the same circumstances. The Legislature has made school districts responsible for the injury of any pupil resulting from the failure of their officers or employees to use ordinary care. What is ordinary care depends upon the circumstances of each particular case and is

to be determined as a fact with reference to the situation and knowledge of the parties.'' (*Bellman* v. *San Francisco High Sch. Dist.*, 11 Cal.2d 576, 582 [81 P.2d 894].) It is not necessary that the officers or employees of the district have actual knowledge of the danger. ■ A plaintiff may recover ''by proving either the existence of a danger known to the authorities who neglected to guard the pupils against it or that there was an unknown peril which by the exercise of ordinary care under the same circumstances a reasonably prudent person would have discovered.'' (P. 584.)

In the Bellman case the court affirmed a judgment[2] in favor of a pupil who was injured while performing a tumbling exercise in a physical education course. She performed the stunt imperfectly, failing to hold her hands out properly. The reviewing court found sufficient evidence to support an implied finding of negligence ''either upon the theory that the 'roll over two' is not an exercise suitable for senior high school girls or that appellant's employees knew or should have known that because of the respondent's mental or physical condition she was not a proper subject for such instruction, or that the class teacher did not properly instruct and supervise her. It also justifies the implied finding of the jury that the respondent was not guilty of contributory negligence. While there was testimony from teachers of physical education that the 'roll over two' is not dangerous, the evidence also shows that injury could result if it was not performed in a particular way. That the respondent sustained some injury while attempting the exercise is certain. Under the circumstances shown in this case the issue of negligence was solely one for the determination of the jury.'' (P. 583 of 11 Cal.2d.)

■ In our case the jury could infer that the instructor saw the knife throwing by several of the pupils in succession. All the boys were ''plainly visible'' and he looked up frequently. If others saw it, he probably saw it going on. Drawing such an inference, the jury could disbelieve his testimony that he did not see it. This principle was applied in *Mastrangelo* v. *West Side U. H. Sch. Dist.*, 2 Cal.2d 540 [42 P.2d 634]. A pupil was injured by an explosion caused by his selecting a wrong ingredient and mixing the ingredients in an improper manner in the chemistry class laboratory. The

---

[2]Contingent upon acceptance by the plaintiff of a reduction in the amount of the recovery.

plaintiff testified that the chemistry teacher was there; he walked behind plaintiff while the latter was mixing the ingredient and did not say anything to plaintiff. At the time of the explosion the teacher was 15 feet behind and looking towards plaintiff. " 'From the foregoing evidence a reasonable inference may be drawn that the chemistry instructor saw the grinding of the ingredients in the iron mortar with the pestle, yet he failed to warn the boys against the danger of that method of mixing them.' " (P. 547.)

It is not necessary, here, to hold as a matter of law that because the class members were plainly visible the "must have seen" rule requires us to draw the inference that the teacher did see the knife throwing activities while in progress.[3] It is sufficient that the jury could reasonably have inferred that he did see the knife being thrown. As said in *Gillette* v. *City & County of San Francisco,* 58 Cal.App.2d 434, 442 [136 P.2d 611] : "Notwithstanding there may be a total absence of any positive testimony that the defendant actually knew of plaintiff's danger, and even though the defendant definitely denies seeing the plaintiff at all, the doctrine of the last clear chance may be invoked and applied where the facts and circumstances are such as would justify the jury in finding that despite the defendant's denial of knowledge or the absence of direct testimony on the subject, he was actually aware of plaintiff's danger in time to avert the accident; in other words, that he 'must have known' of plaintiff's danger."

Even if the jury believed the teacher's statement that he was unaware of any knife throwing until the occurrence of the accident and plaintiff's outcry, they could have inferred that if he had used ordinary care in the use of his power of observation and his opportunity to observe he would have become aware of the knife throwing in ample time to put an end to it and thus could have avoided the accident. This was a point involved in *Charonnat* v. *San Francisco Unified Sch. Dist.,* 56 Cal.App.2d 840 [133 P.2d 643]. During a noon recess, on the school playground, plaintiff got into an altercation with a fellow student during the course of which the latter twisted and broke plaintiff's leg. The teacher then in supervision of the playground professed

---

[3]For an exposition of the "must have seen" rule in negligence cases involving the last clear chance doctrine, see *Darling* v. *Pacific Elec. Ry. Co.,* 197 Cal. 702, 711 [242 P. 703]; *Hoy* v. *Tornich,* 199 Cal. 545, 551 [250 P. 565]; *Haerdter* v. *Johnson,* 92 Cal.App.2d 547, 550-551 [207 P.2d 855].

unawareness of this altercation and testified she was 40 or 50 feet distant and that a great deal of noise was being made by the 150 students on the playground. But there was testimony that she was only 15 or 20 feet away during the five minute period this fight was going on. The ''trial court found that the teacher in charge of the yard was in close proximity to the place where the argument started and the injuries were inflicted, and would and should have prevented the injuries if she had used 'ordinary, or any, reasonable care or diligence to observe the conduct of said plaintiff, . . . and the children under her supervision.' '' (P. 843.) Of this the reviewing court said, ''it would seem that . . . had the supervisor who was standing in close proximity to the plaintiff and Thomas [the pupil who injured plaintiff], been using due care, she would have seen or heard the fighting in time to have avoided serious injury.'' (P. 845.) So, in our case, the jury could find that if the metalcraft teacher had been using due care, he would have observed the knife throwing in time to have avoided any injury to plaintiff.

The cases upon which the district relies do not proceed upon principles different from those which we have cited. Each was decided upon the basis of the facts presented by the evidence or the issues presented by the pleadings. Each is readily distinguishable from the facts of the instant case. One of them, *Hack* v. *Sacramento City Junior Col. Dist.*, 131 Cal.App. 444 [21 P.2d 477], our Supreme Court has already distinguished as one in which the injury ''was caused by the negligent act of students in doing something not particularly directed by the teacher and while he was not present.'' (*Bellman* v. *San Francisco High Sch. Dist., supra,* 11 Cal.2d 576, 584.)[4]

[4] In *Weldy* v. *Oakland High Sch. Dist.*, 19 Cal.App.2d 429 [65 P.2d 851], the trial and the reviewing courts found the allegations of the complaint, as tested by demurrer, inadequate to present an issue of negligence upon the part of the school authorities in the supervision of student spectators at a football game, to prevent rowdyism and the throwing of objects by such spectators.

In *Ford* v. *Riverside City Sch. Dist.*, 121 Cal.App.2d 554 [263 P.2d 626], the plaintiff and a fellow student went surreptitiously to a known forbidden isolated area to obtain date ''thorns'' to play with and was injured while doing so. There were about 200 pupils on the playground at the time, supervised by two teachers who were assisted by a safety committee of fifth and sixth grade students. It was neither alleged nor proved that the teachers in charge of the playground failed to exercise the same care as that which a person of ordinary care charged with his duties would exercise under the same circumstances. The school authorities had no knowledge or notice of any dangerous practice

■ Where, as here, a verdict directed for the defendant is involved, the situation is like that which obtains in the case of a nonsuit or an order directing a verdict for the defendant notwithstanding a verdict for the plaintiff. In any such case the judgment may not stand unless there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff, giving to the evidence in favor of plaintiff all the value to which it is legally entitled and indulging in every legitimate inference which may be drawn from that evidence. In contrast, the granting or refusal of a new trial rests largely in the discretion of the trial judge, whose province and duty it is to scrutinize and weigh the evidence. (See *Washington* v. *City & County of San Francisco*, 111 Cal. App.2d 368, 377 [244 P.2d 774]; *Estate of Lekos*, 109 Cal. App.2d 42, 44 and 47 [240 P.2d 387]; *Devens* v. *Goldberg*, 96 Cal.App.2d 539 [215 P.2d 935].)

The judgment is reversed.

Peters, P. J., and Bray, J., concurred.

---

engaged in by the students in connection with the palm trees. There was no evidence that any of the teachers could reasonably expect that plaintiff would surreptitiously visit the shrub area during the recess period or that the yard supervisors had knowledge of his concealed presence at the palm tree.

In *Goodman* v. *Pasadena City High Sch. Dist.*, 4 Cal.App.2d 65 [40 P.2d 854], a pupil in a school mechanics shop was injured by a flying fragment of aluminum while standing 12 feet distant from the spot where aluminum was being pounded. Plaintiff claimed the instructor was negligent in not requiring him to wear goggles but the reviewing court found no substantial evidence showing that the school authorities knew or ought to have known that plaintiff incurred any such risk in the situation described.

In *Pirkle* v. *Oakdale Union etc. Sch. Dist.*, 40 Cal.2d 207 [253 P.2d 1], a pupil was injured while playing touch football, a ''free play'' activity which was conducted under supervision and in accordance with the rules of the game and prevailing standards and practices in the schools. There was no claim that any player conducted himself improperly. The reviewing court found in such a situation insufficient evidence to support a finding of negligence in the instructors' supervision of the game.