[L.A: No. 29737. In Bank. June 25, 1970.]

WILLIAM WARREN DAILEY et al., Plaintiffs and Appellants, v. LOS ANGELES UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

## COUNSEL

Jack I. Esensten and Walter D. Janoff for Plaintiffs and Appellants.

Veatch, Carlson, Dorsey & Quimby, Robert C. Carlson and Henry F. Walker for Defendants and Respondents.

## OPINION

**SULLIVAN, J.**—During the noon recess on May 12, 1965, Michael Dailey, a 16-year-old high school student, was killed on the playground of Gardena High School. His parents brought this wrongful death action against the Los Angeles Unified School District which operated Gardena High School and against two teachers employed by the district. The case was tried to a jury. Plaintiffs sought to establish that defendants' negligence in failing to provide adequate supervision was the proximate cause of Michael's death. After both sides had rested, the trial court granted a motion for a

directed verdict in favor of all defendants. Plaintiffs appeal from the judgment entered on that verdict.

The sole issue in this case is whether the motion for a directed verdict was properly granted. ▮▮▮ We carefully stated the law applicable to this inquiry in *Estate of Lances* (1932) 216 Cal. 397 [14 P.2d 768]. We there held: "A . . . directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' [Citations.] Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. [Citation.] . . . the function of the trial court on a motion for a directed verdict is analogous to . . . that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict." (216 Cal. at pp. 400-401.) We have adhered consistently to the rules just set forth and have repeatedly reversed judgments entered on directed verdicts where the resisting party produced sufficient evidence to support a jury verdict in his favor.[1]

With these principles in mind we proceed to consider the evidence in the record which is most favorable to plaintiffs and must be accepted as true. (*Taylor* v. *Centennial Bowl, Inc., supra,* 65 Cal.2d 114, 117 [52 Cal.Rptr. 561, 416 P.2d 793].)

▮▮▮ On the day of his death Michael and three of his friends ate lunch in an outdoor area designated for that purpose. After they finished eating, they proceeded to the boys' gymnasium where their next class was scheduled. When they reached the gym area, Michael and one of his friends began to "slap fight" or "slap box," a form of boxing employing open hands rather than clenched fists and in which the object, at least initially,

---

[1]See *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465, 469 [85 Cal.Rptr. 629, 467 P.2d 229]; *Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84]; *Estate of Callahan* (1967) 67 Cal.2d 609, 612 [63 Cal. Rptr. 277, 432 P.2d 965]; *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 120-121 [52 Cal.Rptr. 561, 416 P.2d 793]; *Casey* v. *Proctor* (1963) 59 Cal.2d 97, 100 [28 Cal.Rptr. 307, 378 P.2d 579]; *Estate of Flood* (1933) 217 Cal. 763, 769 [21 P.2d 579].)

is to demonstate speed and agility rather than to inflict physical injury on the opponent. They continued boxing for 5 to 10 minutes and a crowd of approximately 30 students gathered to watch. Suddenly, after being slapped, Michael fell backwards, fracturing his skull on the asphalt paving. He died that night.

Richard Ragus, who was boys' vice principal at Gardena High School when the incident occurred, testified as to the general plan for student supervision during the noon hour. It appears that all 2,700 students ate lunch during one session. While they were actually eating, students were required to remain in either the indoor cafeteria or the enclosed outdoor area noted above. When they had finished eating, however, they were free to use any part of the 55-acre campus except the parking lot. Three administrative personnel and two teachers were assigned to supervise students during the lunch period. The area around the gymnasium, however, was the specific responsibility of the physical education department.

Defendant Raymond Maggard was the chairman of the physical education department at Gardena High school. He acknowledged that his department had supervisory responsibility for the area in which the accident occurred, but asserted that he had never been informed by the school administration that it was his duty to assign a particular teacher to supervise on a particular day.[2] Maggard testified that there was no formal schedule assigning supervision times, and that supervision was left to the person in the gym office. Maggard himself was playing bridge in the dressing room while the slap boxing was going on.

Defendant Robert Daligney was a physical education instructor at Gardena High School. He was "the person in the gym office" during the noon hour on May 12, 1965. Like defendant Maggard, he recognized that his department had the responsibility to supervise the athletic field and the paved area immediately surrounding the gym. He conceded that there was no set procedure for determining who was to supervise on particular days or what their duties were in regard to supervision. Daligney spent the entire noon hour in the office, eating lunch and preparing for afternoon classes. The desk at which he was seated faced away from the office windows and a wall obscured the view of the area in which the slap boxing took place. He concurred with Maggard that while slap boxing was a normal activity for male high school students, it could lead to "something dangerous." He testified that initially friendly slap boxing could escalate into actual fighting and that when he observed students engaging in it he would order them to stop immediately. Daligney did not step outside

---

[2]Maggard conceded that if anyone did have this responsibility, he did.

the office during the noon period, did not notice a crowd, and recalled hearing no noises which would have indicated a disturbance outside the gymnasium.

Wiliam McDowell was a friend of Michael Dailey and had accompanied him from the lunch area to the gym. He admitted having participated in slap boxing matches but testified that he would not begin to slap box if a teacher were present and would immediately stop once a teacher appeared.

Before we can decide whether or not the foregoing evidence is sufficient to support a verdict in plaintiffs' favor, we must determine what, if any, duty is owed by those in defendants' position to students on school grounds. While school districts and their employees have never been considered insurers of the physical safety of students, California law has long imposed on school authorities a duty to "supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citations.]" (*Taylor* v. *Oakland Scavenger Co.* (1941) 17 Cal.2d 594, 600 [110 P.2d 1044]; Ed. Code, § 13557. See generally, Seitz, *Legal Responsibility Under Tort Law of School Personnel and School Districts as Regards Negligent Conduct Toward Pupils* (1964) 15 Hastings L.J. 495; Note, *Negligence Liability of Schoolteachers in California* (1964) 15 Hastings L.J. 567.) ■ The standard of care imposed upon school personnel in carrying out this duty to supervise is identical to that required in the performance of their other duties. This uniform standard to which they are held is that degree of care "which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstanes." (*Pirkle* v. *Oakdale Union etc. School Dist.* (1953) 40 Cal.2d 207, 210 [253 P.2d 1]; *Bellman* v. *San Francisco High School Dist.* (1938) 11 Cal.2d 576, 582 [81 P.2d 894].) ■ Either a total lack of supervision (*Forgnone* v. *Salvador Union Elementary School Dist.* (1940) 41 Cal.App.2d 423 [106 P.2d 932]) or ineffective supervision (*Buzzard* v. *East Lake School Dist.* (1939) 34 Cal.App.2d 316 [93 P.2d 233]) may constitute a lack of ordinary care on the part of those responsible for student supervision. ■ Under section 815.2, subdivision (a) of the Government Code, a school district is vicariously liable for injuries proximately caused by such negligence.[3]

---

[3]Section 815.2, subdivision (a) provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

Section 815.2 is one of the basic substantive provisions of the 1963 California Tort Claims Act (Gov. Code, § § 810-996.6). It carries over to all "public entities" (Gov. Code, § 811.2) the *respondeat superior* liability that previously had been imposed upon school districts by Education Code section 903. That section, repealed concur-

■ The fact that Michael Dailey's injuries and death were sustained as a result of boisterous behavior engaged in by him and a fellow student does not preclude a finding of negligence. ■ Supervision during recess and lunch periods is required, in part, so that discipline may be maintained and student conduct regulated. Such regulation is necessary precisely because of the commonly known tendency of students to engage in aggressive and impulsive behavior which exposes them and their peers to the risk of serious physical harm.[4] ■ High school students may appear to be generally less hyperactive and more capable of self-contol than grammar school children. Consequently, less rigorous and intrusive methods of supervision may be required. Nevertheless, adolescent high school students are not adults and should not be expected to exhibit that degree of discretion, judgment, and concern for the safety of themselves and others which we associate with full maturity. As the court observed in *Satariano* v. *Sleight* (1942) 54 Cal.App.2d 278, 283 [129 P.2d 35]: "[W]e should not close our eyes to the fact that . . . boys of seventeen and eighteen years of age, particularly in groups where the herd instinct and competitive spirit tend naturally to relax vigilance, are not accustomed to exercise the same amount of care for their own safety as persons of more mature years." Recognizing that a principal task of supervisors is to anticipate and

rently with the enactment of the Tort Claims Act (Stats. 1963, ch. 1681, § 5, p. 3285), provided: "The governing board of any school district is liable as such in the name of the district for any judgment against the district on account of injury to person or property arising because of the negligence of the district, or its officers or employees."

All of the cases cited herein were decided under Education Code section 903, or under one of its predecessor statutes. (See Van Alstyne, California Government Tort Liability (1964) § 2.6, pp. 37-38.) While these cases may have been superseded in certain respects by subsequently enacted statutory provisions, they certainly have not been wholly abolished as precedent by the California Tort Claims Act. The pattern of vicarious liability for employees' negligence is essentially identical under both statutes. We have found no evidence indicating an intention on the part of the Legislature to alter the duty to provide supervision of students while on school grounds, the standard of care required of those undertaking to provide supervision, or the amount of evidence necessary to support a finding of negligence. (See Gov. Code, §§ 815-815.2 and the corresponding legislative committee comments.) Consequently, these cases remain valid authority for the propositions for which they are cited.

[4] The court in *Charonnat* v. *San Francisco Unified School Dist.* (1943) 56 Cal. App.2d 840 [133 P.2d 643] remarked that it "is not unreasonable to anticipate that where as here boys are at play, and there are arguments and fights, that the fighting may result in serious injury; and under such circumstances the law imposes the duty on the school authorities to provide sufficient supervision so that the fighting may be stopped before serious injury results." (56 Cal.App.2d at p. 844.) And in *Forgnone* v. *Salvador Union Elementary School Dist., supra,* 41 Cal.App.2d 423, the court stated: "We assume that the purpose of the law [Sch. Code, § 5.543, now Ed. Code, § 13557] requiring supervision of pupils on the playgrounds and on the school property during school hours is to regulate their conduct so as to prevent *disorderly and dangerous practices* which are likely to result in physical injury to immature scholars under their custody." (41 Cal.App.2d at p. 426.) (Italics added.)

curb rash student behavior, our courts have often held that a failure to prevent injuries caused by the intentional or reckless conduct of the victim or a fellow student may constitute negligence. (*Beck* v. *San Francisco Unified School Dist.* (1964) 225 Cal.App.2d 503 [37 Cal.Rptr. 471]; *Ziegler* v. *Santa Cruz City High School Dist.* (1959) 168 Cal.App.2d 277 [335 P.2d 709]; *Tymkowicz* v. *San Jose etc. School Dist.* (1957) 151 Cal.App.2d 517 [312 P.2d 388]; *Lilienthal* v. *San Leandro etc. School Dist.* (1956) 139 Cal.App.2d 453 [293 P.2d 889]; *Charonnat* v. *San Francisco Unified School Dist.*, *supra*, 56 Cal.App.2d 840; *Forgnone* v. *Salvador Union Elementary School Dist.*, *supra*, 41 Cal.App.2d 423; *Buzzard* v. *East Lake School Dist.*, *supra*, 34 Cal.App.2d 316.)[5]

We come then to the question of whether the evidence in this case was sufficient to support a finding of negligent supervision.[6]  ▄▄  There was

---

[5]In *Beck, supra,* plaintiff was injured in a sudden, violent attack by two other students at a school carnival. Evidence that no teachers were observed in the vicinity of the attack for some time prior to the incident was held sufficient to make out a prima facie case of negligent supervision.

In *Ziegler, supra,* one student suddenly pushed another student who had been sitting on a railing near a stairwell. The latter was killed in the ensuing fall. Although students had been warned against sitting on this railing, no teacher was assigned to supervise students as they used the stairs. This was held to constitute sufficient evidence to submit to the jury the question of whether there should have been supervision of this area.

In *Tymkowicz, supra,* students had been playing "Blackout" on the schoolground for approximately 10 minutes. Suddenly one student collapsed, striking his head on the pavement. No teacher had been observed by the students on the playground. This evidence was held sufficient to submit the issue of the adequacy of supervision to the jury.

In *Lilienthal, supra,* the plaintiff was injured when struck in the eye by a piece of metal thrown by another student. The incident occurred during class and while the teacher was present he testified that he did not observe any students throwing the metal. There was testimony that several students had been throwing the metal fragment for approximately 30 minutes before the accident occurred. This was held to be sufficient evidence to support a jury finding that the failure to notice and halt the students' conduct constituted negligence.

In *Charonnat, supra,* the plaintiff's leg was broken during a fight with another student. One teacher had been assigned to supervise the 150 students during the recess when the incident took place. This evidence was sufficient to support a finding that the level of supervision was inadequate and that the failure of the one supervisor to observe and stop the altercation was negligent.

In *Forgnone, supra,* plaintiff's arm was broken in a scuffle with another student during lunch period. No teacher was present in the classroom for some time prior to the occurrence. These facts were enough to support a complaint based on negligent supervision against a demurrer.

In *Buzzard, supra,* plaintiff was injured when struck with a bicycle during recess. The supervising teacher, while present, had permitted the other student to ride the bicycle among the children on the playground. This was sufficient evidence to support a finding of negligent supervision.

[6]It is the uniform rule that the determination of whether the supervision is adequate, that is, whether it amounts to due care, is a question of fact for the jury. (*Beck* v.

evidence to the effect that Mr. Maggard, the responsible department head, had failed to develop a comprehensive schedule of supervising assignments and had neglected to instruct his subordinates as to what was expected of them while they were supervising. Instead, it appears that both the time and the manner of supervision were left to the discretion of the individual teacher. Mr. Daligney, the instructor ostensibly on duty at the time of the accident, remained inside an office during the entire lunch period, even though the area of his supervisorial responsibility was large and even though all students were outside the gymnasium. He did not station himself in the office in such a fashion as to maximize his ability to observe the students outside, but sat with his back to the window. He did not devote his full attention to supervision but ate lunch, talked on the phone, and prepared future class assignments. Neither defendant Daligney nor defendant Maggard heard or saw a 10-minute slap boxing match which attracted a crowd of approximately 30 spectators, although this took place within a few feet of the gymnasium. From this evidence a jury could reasonably conclude that those employees of the defendant school district who were charged with the responsibility of providing supervision failed to exercise due care in the performance of this duty and that their negligence was the proximate cause of the tragedy which took Michael's life.

■ The fact that another student's misconduct was the immediate precipitating cause of the injury does not compel a conclusion that negligent supervision was not the proximate cause of Michael's death.[7] Neither the mere involvement of a third party nor that party's wrongful conduct is sufficient in itself to absolve the defendants of liability, once a negligent failure to provide adequate supervision is shown. (*Beck* v. *San Francisco Unified School Dist., supra,* 225 Cal.App.2d at p. 508; *Charonnat* v. *San Francisco Unified School Dist., supra,* 56 Cal.App.2d at p. 846.)

*San Francisco Unified School Dist.,* 225 Cal.App.2d 503, 508-509 [37 Cal.Rptr. 471]; *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 11 [31 Cal.Rptr. 847], and cases there cited.)

[7]There is no real dispute in this case as to the existence of actual or "but for" causation. There was testimony from which a jury could find that had either individual defendant actually observed the slap boxing encounter, he would have ordered it to stop. There was also evidence from which a jury could conclude that had either defendant patrolled outside the gymnasium, his mere presence could have deterred the students from initiating the contest. The case at bench is thus distinguishable from those which involved injuries that were as likely to occur in the presence of a teacher as in his absence, and under well-supervised conditions as under negligent supervision. (See, e.g., *Woodsmall* v. *Mt. Diablo etc. School Dist.* (1961) 188 Cal.App.2d 262 [10 Cal.Rptr. 447]; *Wright* v. *City of San Bernardino High School Dist.* (1953) 121 Cal.App.2d 342 [263 P.2d 25].) The question of actual causation [that is, whether or not more diligent supervision would have prevented the accident] is essentially a factual determination for the jury. (*Beck* v. *San Francisco Unified School Dist., supra,* at p. 508; *Raymond* v. *Paradise Unified School Dist., supra,* 218 Cal.App.2d 1, 7; *Tymkowicz* v. *San Jose etc. School Dist., supra,* 151 Cal.App.2d 517, 521.)

Nor is this a case in which the intervening conduct of the other student is so bizarre or unpredictable as to warrant a limitation of liability through the expedience of concluding, as a matter of law, that a negligent failure to supervise was not the proximate cause of the injury. There was testimony in the instant case that "roughhousing" and "horseplay" are normal activities for high school boys and it is the function of adult supervision to control just such conduct.[8] The events which occurred in the instant case are precisely what one would expect from unsupervised adolescents. Of course, it is not necessary that the exact injuries which occurred have been foreseeable; it is enough that "a reasonably prudent person would foresee that injuries of the same general type would be likely to occur in the absence of adequate safeguards. [Citations.]" (*Ziegler* v. *Santa Cruz City High School Dist., supra,* 168 Cal.App.2d 277, 284; see *Taylor* v. *Oakland Scavenger Co., supra,* 17 Cal.2d 594, 600.)

In summary, we conclude that there was evidence of sufficient substantiality to support a verdict in favor of these plaintiffs and we are satisfied that the trial court erred in granting the motion for a directed verdict.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

---

[8]Mr. Ragus, the boys' vice principal, testified that teachers were required to supervise high school students "for the very obvious reasons, youngsters smoke, youngsters climb over fences, youngsters fight, youngsters do all of these things." In this regard, he testified that he received an average of one complaint per week about fighting among students.