Filed 10/27/21; certified for publication 11/16/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PAULA LEROY et al., | |
| Plaintiffs and Appellants, | E072951 |
| v. | (Super. Ct. No. CIVDS1605318) |
| DIANA YARBOI et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Keith D. Davis, Judge.  Affirmed.

Schwartzberg & Luther and Sagi Schwartzberg, for Plaintiffs and Appellants.

Thompson & Colegate, Susan K. Beck and Lisa V. Todd, for Defendants and Respondents.

# I.

## INTRODUCTION

Plaintiff and appellant, Paula and Christopher LeRoy suffered the immeasurable loss of their 15-year-old son, Kennedy LeRoy, who committed suicide in their home two days after finishing his sophomore year at Ayala High School in Chino. The LeRoys sued the Chino Valley Unified School District, Ayala's principal, Diana Yarboi, and its assistant principal, Carlo A. Purther (collectively, Respondents). The LeRoys alleged Respondents were liable for Kennedy's suicide because of their inadequate response to his complaints of bullying by his classmates. The trial court granted summary judgment for Respondents, and the LeRoys timely appealed. We conclude Respondents are statutorily immune from liability and therefore affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

Kennedy attended Ayala during his freshman and sophomore years. He suffered from Tourette's Syndrome, sensory integration disorder, and borderline Asperger's Syndrome.

During his freshman year, Kennedy was placed in a "virtual school" program in part because of his health issues. Kennedy physically attended Ayala during his sophomore year only for lunch and two periods, one of which was cooking class.

Several students, including M.D., bullied and harassed Kennedy during every cooking class. M.D. and his friends called Kennedy a "faggot" or "fag," told him "God

hates fags," pushed him into the walls, threw things at him, and told him he was annoying and to stop talking.

On March 6, 2015, Kennedy reported M.D.'s bullying to Ayala administrators, telling them he "couldn't take it anymore." Kennedy told Purther that M.D. was harassing him and called him a "faggot." Kennedy did not report any other students.

Later that day, Purther talked to M.D. about Kennedy's complaint. M.D. denied calling Kennedy a "faggot" and claimed that Kennedy recently insulted him and his family. At Purther's request, M.D. signed a Behavior Expectations Contract, also known as a "No Contact Contract," in which he agreed not to contact Kennedy in any way. Because Purther knew Kennedy had Asperger's, he referred Kennedy to the school psychologist. Kennedy did not "give [Purther] a lot of information," so Purther thought that the psychologist could get more information from Kennedy and help "if something's going on." Purther also referred Kennedy to Chino Human Services.

Purther called Mr. LeRoy to discuss the situation. Purther explained what Kennedy had told him, that the student Kennedy complained about had been put on a No Contact Contract, and that Kennedy would have to agree to one as well. Mr. LeRoy told Purther that his resolution "sounded reasonable" and thanked him for the call.

Later that afternoon, Mr. LeRoy spoke with Kennedy about his call with Purther. Kennedy said the situation was "over with" and that he would agree to sign a No Contact Contract. Kennedy did not tell Mr. LeRoy who was bullying him or explain what M.D. had said and done to him. Kennedy never mentioned the situation to Mr. LeRoy again.

3

Three days later, Kennedy signed a No Contact Contract agreeing not to contact M.D. in any way.  A few weeks later, Kennedy again complained about M.D.'s behavior to Purther.  Kennedy stated that M.D. was doing something to cause him to suffer painful Tourette's "ticks."[1]  On April 2, 2015, however, Kennedy signed an "Incident Report" in which he stated that M.D. "has not spoke[n] to me."  M.D. denied speaking with Kennedy after signing the No Contact Contract.  Purther believed Kennedy and M.D. were telling him the truth when they reported they had not spoken to one another about a month after signing their respective No Contact Contracts.

Kennedy's last day of the school year was on June 10, 2015.  The following day, Kennedy slept, went bowling with a friend and his family, and then watched television at home.  On June 12, 2015, Kennedy wrote a suicide note and then ended his life that evening.  An autopsy confirmed that Kennedy ingested a fatal amount of diphenhydramine (Benadryl) and sertraline (Zoloft).

The LeRoys sued Respondents for Kennedy's death.  After Respondents' successful demurrers, the LeRoys' operative Second Amended Complaint alleged a claim for negligence under Government Code sections 815.2, 815.6, and 820, and a claim for violation of Title IX (20 U.S.C. §§ 1681 et seq.).  The thrust of their claims was that Kennedy committed suicide because of the bullying by M.D. and other students, which Respondents negligently failed to address and prevent.

---

[1] The record is unclear as to what M.D. was doing to cause Kennedy's "ticks."

Respondents individually moved for summary judgment. The trial court granted the motions. The trial court ruled LeRoys' negligence claim failed because Respondents did not breach any duty they owed to Kennedy and they were immune from liability under Education Code section 44808 (section 44808) and the LeRoys' Title IX claim failed because Respondents did not act with deliberate indifference. The LeRoys timely appealed.

III.

DISCUSSION

On appeal, the LeRoys do not challenge the trial court's ruling on their Title IX claim, but they argue the trial court erroneously granted summary judgment for Respondents on their negligence claim. We disagree.

"A party moving for summary judgment bears the burden of persuasion there is no triable issue of material fact and is entitled to judgment as a matter of law. A defendant satisfies this burden by showing one or more elements of the cause of action in question cannot be established or there is a complete defense to that cause of action. If the defendant meets this initial burden, the opposing party must then make a prima facie showing of the existence of a triable issue of material fact. [Citation.] [¶] We review the denial of a motion for summary judgment de novo. [Citation.] We strictly construe the moving party's affidavits and liberally construe the opposing party's affidavits. We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence." (*City of San Diego v. Superior Court*

5

(2006) *supra*, 137 Cal.App.4th 21, 25.)  Thus, "[w]hen deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment."  (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467.)

The LeRoys argue the District is liable for negligently causing Kennedy's suicide under Government Code section 815.2, which provides that a public entity like the District is liable for the negligent acts caused by an employee unless the employee is immune from liability.  (Gov. Code, § 815.2, subds. (a), (b); *C.A. v. Williams S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869 ["Under [§] 815.2, subdivision (a) of the Government Code, a school district is vicariously liable for injuries proximately caused by such negligence."].)  The LeRoys argue Yarboi and Purther are liable under Government Code section 820, subdivision (a), which similarly provides that "a public employee is liable for injury caused by his act or omission to the same extent as a private person."

Thus, to prevail on their negligence claim, the LeRoys must establish that Respondents owed Kennedy a duty of care, they breached that duty, and their breach was the proximate cause of Kennedy's injuries.  (*Dailey v. Los Angeles Unified School Dist.* (1970) 2 Cal.3d 741, 747; *Guerrero v. South Bay Union School Dist.* (2003) 114

6

Cal.App.4th 264, 268 [tort liability for public entities, such as school, is based on Government Code provisions]).

Respondents contend that even if they breached a duty they owed to Kennedy and their breach proximately caused Kennedy's injuries, they are immune from liability under section 44808. We agree.

Section 44808 provides in full: "Notwithstanding any other provision of this code, no school district, city or county board of education, county superintendent of schools, or any officer or employee of such district or board shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district, board, or person has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances. [¶] In the event of such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board."

The LeRoys argue Respondents are not immune under section 44808 because they "failed to exercise reasonable care under the circumstances." (Educ. Code, § 44808.) To support their argument, the LeRoys rely primarily on *Hoyem v. Manhattan Beach City*

7

*School District* (1978) 22 Cal.3d 508 (*Hoyem*).[2]  There, our Supreme Court held that a school district was not immune from liability under section 44808 for the injuries a student sustained when he was hit by a motorcycle after leaving the school's premises without permission.  (*Hoyem*, *supra*, at p. 512.)  The LeRoys argue that Respondents are liable for Kennedy's death under *Hoyem* because their negligent failure to protect him from bullying on campus led to his suicide.

We acknowledge that some language from *Hoyem* suggests that school districts and their employees may be liable for injuries a student suffers off-campus and after school.  (See *Bassett v. Lakeside Inn, Inc.* (2006) 140 Cal.App.4th 863, 872.)  But section 44808 has been interpreted as imposing liability on schools districts for a student's off-campus injury only when "the student is involved in activities supervised or undertaken by the school."  (*Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 190.)  In fact, the "consensus of decisions from the Court of Appeal is that 'section 44808 limits the liability of schools for after-hours, off-campus activity, absent a specific undertaking'" by the school during which a student is injured.  (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1356 (*Cerna*).)  Thus, with one exception, every court since *Hoyem*, including this court, "has interpreted section 44808 to provide that school districts are not responsible for the safety of students outside school property absent a

---

[2]  The LeRoys also rely on *Dailey v. Los Angeles Unified School* District, *supra*, 2 Cal.3d 741 and *Calandri v. Ione Unified School Dist.* (1963) 219 Cal.App.2d 542, to support their argument that Respondents are not immune from liability under section 44808.  Both cases, however, were decided before section 44808 was enacted in 1976.

specific undertaking by the school district and direct supervision by a district employee." (*Cerna*, *supra*, at pp. 1356-1357; *Mosley v. San Bernardino City Unified School Dist.* (2005) 134 Cal.App.4th 1260, 1265.)

We agree with the great weight of authority that section 44808 "'grants a district [and its employees] immunity [for a student's injuries] unless [the] student was (or should have been) directly supervised during a specified undertaking.' [Citation.]" (*Mosley v. San Bernardino City Unified School Dist.*, *supra*, 134 Cal.App.4th at p. 1265; accord, *Guerrero v. South Bay Union School Dist.*, *supra*, 114 Cal.App.4th at pp. 271-272.) We in turn agree that "[t]he portion of section 44808 that refers to failing to exercise reasonable care" that the LeRoys rely on "does not create a common law form of general negligence; it refers to the failure to exercise reasonable care during one of the [three] mentioned undertakings" in section 44808. (*Bassett v. Lakeside Inn, Inc.*, *supra*, 140 Cal.App.4th at p. 871; *Cerna*, *supra*, 161 Cal.App.4th at pp. 1356-1357)

Kennedy committed suicide off-campus during summer break in the LeRoys' home while he was not and should not have been supervised by Respondents or any other Ayala employee. At the time, no one at Ayala had assumed responsibility for his well-being. Under these tragic circumstances, Respondents are immune from liability for Kennedy's death under section 44808, even if they breached a duty they owed him. (See *Cerna*, *supra*, 161 Cal.App.4th at p. 1357.) Having found Education Code section 44808 applicable, we conclude the trial court properly granted Respondents summary judgment

9

on the LeRoys' negligence claim and need not consider [the LeRoys'] other arguments." (*Mosley v. San Bernardino City Unified School Dist.*, *supra*, 134 Cal.App.4th at p. 1265.)

## IV.

## DISPOSITION

The judgment is affirmed.  Respondents may recover their costs on appeal.

CODRINGTON

J.

We concur:


McKINSTER

Acting P. J.


FIELDS

J.

Filed 11/16/21

ORDER

PAULA LEROY et al.,
   Plaintiffs and Appellants,
   v.
DIANA YARBOI et al.,
   Defendants and Respondents.

E072951

(Super. Ct. No. CIVDS1605318)

ORDER CERTIFYING
OPINION FOR PUBLICATION

_____

THE COURT

     Request having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on November 08, 2021, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

     IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter on October 27, 2021, is certified for publication.

     CERTIFIED FOR PUBLICATION

CODRINGTON    
                  J.


We concur:

McKINSTER    
       Acting P. J.

FIELDS    
        J.