[Civ. No. 4494.   Fourth Dist.   Nov. 17, 1953.]

GERALD WRIGHT, a Minor, etc., et al., Appellants, v.
CITY OF SAN BERNARDINO HIGH SCHOOL DIS-
TRICT, Respondent.

Wilson & Wilson for Appellants.

Albert E. Weller, Harold M. Manell, Ward O. Mathews
and Swing & Gillespie for Respondent.

BARNARD, P. J.—This is an action for damages for per-
sonal injuries sustained by the minor plaintiff while a member
of a physical education class conducted by the school district.
The teacher of the class, Ralph Simpson, was originally made
a defendant but the action was dismissed as to him and went

to trial as against the school district only. At the conclusion of plaintiff's evidence the court granted the district's motion for a judgment of nonsuit, and the plaintiffs have appealed.

There is no dispute as to the facts. Gerald Wright, a 16-year-old junior in this high school, was a member of the tennis and handball class conducted by the district. This class was composed of members of the varsity tennis team, the team's managers and those who aspired to make the team. Wright, who wore rimless glasses, had been a member of the class that year and the year before.

On the day in question the teacher, who acted as tennis coach, needed the usual class time to make the bracketings for a tennis tournament, a school activity, which was to be held that afternoon. He met the class at the beginning of the period and told them there would be no supervised activity that morning; that they were to remain in the vicinity of the dressing room or foyer of the gymnasium "until we could work out the bracketing"; and that roll would be taken at the close of the period. He then went into the coach's office, which opened on the foyer with a Dutch door, the lower half of which was closed, and was working on the bracketing with the assistance of some members of the class. During the period he passed several times through the foyer and knew that there were boys in the gymnasium, but did not enter that room to see what they were doing.

After the teacher's announcement several of the boys put on tennis shoes and entered the gymnasium to play handball. This was done by batting a tennis ball against one wall with their hands. Wright and another boy were playing this game on the west half of the gymnasium floor and six other boys were playing the same game on the east half. Other boys were sitting around watching the activities.

Sometime during the class period two boys, Evans and Griffin, started a different game between the two handball games. In this game Evans would throw a tennis ball toward Griffin, who would bat the ball back with a tennis racquet swung like a baseball bat. The ball was thrown "hard" at times. This was not the usual manner of playing tennis, and had not been previously used during a class period. During the course of his handball game Wright would at times come within 2 or 3 feet of the line of play between Evans and Griffin. When the shower bell rang, near the close of the period, Wright was 3 or 4 feet to the west of the line of activity between Evans and Griffin. As the bell rang, he

turned and ran toward the door leading to the shower, thus stepping into the line of flight of a tennis ball which had just been thrown by Evans. The ball struck his right eye, breaking his glasses, as a result of which his eye was severely damaged. The tennis ball used in the Evans-Griffin game was like those being used in the handball games, being about 2½ inches in diameter and covered with a cloth fabric with a fuzzy surface.

Wright testified that he saw Evans and Griffin enter the gymnasium and start playing; that he knew the ball was being thrown by Evans toward Griffin, and saw the ball go by a good many times; that he knew there was an established line of play between them, and did not believe there was any risk of being hit by a ball thrown along that line of play; that he did not believe there was any particular risk of injury involved in the game he was playing, or about the game being played by Griffin and Evans; that he was an experienced tennis player, having played an hour every day during one school year and most of another, while wearing his glasses; that he could not play "tennis or any game" without his glasses; that he knew there was some slight risk of injury from playing with glasses on, but this was one of the ordinary risks which he knowingly accepted; that when the shower bell rang he turned and started running, without looking to see where the ball was, as he was in a hurry to take a shower; that nothing had occurred which led him to believe that the Evans-Griffin game had been discontinued; that there was nothing to prevent him from seeing Evans when he first turned to run; and that he saw Evans as he was running and after the ball was thrown.

The appellants contend that the evidence was sufficient to require that the issues of negligence and proximate cause be submitted to the jury; that the respondent was under a duty to supervise the boys of this class; that the evidence amply discloses a breach of this duty; and that such negligence was the proximate cause of the injuries because proper supervision would have prevented Evans and Griffin from starting their dangerous activity in the first place, and because a person of ordinary prudence would have stopped the game. It is argued that the jurors might have concluded that this "game" was dangerous, that the teacher should have stopped it, and that the respondent should have foreseen that an injury of this type was likely to happen. They rely on *Charonnat* v. *San Francisco Unified Sch. Dist.*, 56 Cal.App.2d 840 [133 P.2d

643]; *Ogando* v. *Carquinez G. School Dist.*, 24 Cal.App.2d 567 [75 P.2d 641]; *Buzzard* v. *East Lake School Dist.*, 34 Cal.App.2d 316 [93 P.2d 233]; *Satariano* v. *Sleight*, 54 Cal. App.2d 278 [129 P.2d 35]; *Bellman* v. *San Francisco H. S. Dist.*, 11 Cal.2d 576 [81 P.2d 894]; *Stockwell* v. *Board of Trustees*, 64 Cal.App.2d 197 [148 P.2d 405]; *Taylor* v. *Oakland Scavenger Co.*, 17 Cal.2d 594 [110 P.2d 1044]; *Forgnone* v. *Salvador U. E. School Dist.*, 41 Cal.App.2d 423 [106 P.2d 932]; *Lindsey* v. *De Vaux*, 50 Cal.App.2d 445 [123 P.2d 144]; *Rovegno* v. *San Jose K. of C. Hall Assn.*, 108 Cal.App. 591 [291 P. 848]. In all of those cases the evidence disclosed dangerous conduct of others which exposed the victim to harm, there was a failure on the part of the defendant to exercise ordinary care to stop or prevent the dangerous act, and there was substantial evidence from which the jury could reasonably infer that the harm would not have resulted had this duty been performed.

The rules relating to negligence in supervision and to proximate cause, in such cases, are well settled and need not be here analyzed or repeated. Each case must be decided upon its own facts, and the controlling questions here are whether the teacher of this class did what a reasonable person would have done under the circumstances, and whether it may be said that the evidence is such that reasonable and unprejudiced minds might reach different conclusions in that regard. The issues of negligence and proximate cause are closely connected here, and it would serve no useful purpose to consider them separately.

This was a physical education class in next to the last year of high school. The class consisted of a select group interested in making the team, or improving their work on the team, for the purpose of interscholastic competition. The boys had had considerable experience in using tennis balls in playing both tennis and handball. The playing of handball is not an inherently dangerous game. (*Pirkle* v. *Oakdale Union etc. School Dist.*, 40 Cal.2d 207 [253 P.2d 1].) The playing of several games on a gymnasium floor at the same time is common, and ordinarily leads to no unusual danger. The fact that this ball was being thrown at the time cannot, in itself, reasonably be said to have created an unusually dangerous situation which should have been anticipated. Balls are thrown and batted in many games, and the danger to be anticipated from the throwing of a tennis ball is certainly

much less than that from throwing any other ball, unless it be a ping pong ball. In a tennis game, knocked balls often have a velocity greater than that of a thrown ball, and in a handball game the ball frequently if not usually travels with considerable velocity. Any danger which here appears arose from the fact that Wright was wearing glasses, and the fact that these glasses were rimless increased that risk. That risk was equally great whether the ball was thrown or batted, and did not depend on an unusual speed of the ball. He was conscious of that risk and was willing to take it because he could play no games without glasses. The same sort of injury was likely to happen in any game of tennis or of handball, and regardless of whether the ball was being thrown or batted. The accident did not happen because Evans and Griffin were using a tennis ball in a somewhat different way, but because Wright, with full knowledge of what they were doing, suddenly rushed without looking into their line of play.

The teacher was engaged in other work in the line of his duty, in connection with a tournament which was directly connected with the activities of this class. In view of his duties and the nature of the class and its purposes it cannot reasonably be said that the teacher was negligent in failing to be with and to watch these boys during this time, or that proper supervision would have required a person of ordinary prudence to prevent the activity in the first place, or to stop the game. The play with tennis balls by older boys would naturally seem harmless, no danger appeared during a considerable time, and the danger which suddenly developed could not reasonably be said to have resulted from or been caused by the absence of the teacher. As was said in a New York case, "This is one of those events which could occur equally as well in the presence of the teacher as during her absence." (*Ohman* v. *Board of Education*, 300 N.Y. 306 [90 N.E.2d 474].)

It cannot reasonably be inferred that the teacher, if present, would or should have foreseen that the activity of Evans and Griffin would make the situation more dangerous than usual. They were playing with a tennis ball, in line with the usual activity of the class, and over a considerable period their activity had not interfered with the handball games on either side. They were all experienced players, there were fewer players on that half of the floor than on the other, and there was no inherent danger in the game itself or in the fact that a tennis ball was being thrown, rather than batted. The

element of danger arose only from the fact that Wright wore rimless glasses, and because of his sudden action in running into another field of play of which he was aware. It cannot reasonably be inferred that this act was one which should have been anticipated in advance. And the time between Wright's sudden act and the injury was so short that the teacher, if present, would have had no opportunity to recognize a new hazard in time to have taken any action to prevent the injury. If it be assumed that any negligence appears, the evidence would not support the conclusion that it was the proximate cause of the injury.

There is some possible danger in any game and in almost every act in life. It cannot reasonably be inferred that the risk here involved was such that a failure to prevent in the first instance, or to later stop, any or all of these games was sufficient to make the respondent responsible for what occurred. In our opinion, the evidence was not sufficient to have supported a verdict for the plaintiffs, had one been returned.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.