[No. B184274. Second Dist., Div. Three. Sept. 28, 2006.]

JANE HEMADY, a Minor, etc., et al., Plaintiffs and Appellants, v. LONG BEACH UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

Counsel

Edna V. Wenning; Bond Curtis and Alexander W. Kirkpatrick for Plaintiffs and Appellants.

Thomas Law Firm and Allen L. Thomas for Defendants and Respondents.

Opinion

KITCHING, J.—

## INTRODUCTION[1]

Plaintiff and appellant Jane Hemady (plaintiff), a 12-year-old student, was struck in the face with a golf club by another student during a seventh grade physical education golf class. Plaintiff seeks damages for personal injuries from defendants and respondents the Long Beach Unified School District (the District) and the instructor of the middle school golf class, Brian Feely (Feely) (collectively, defendants).

■ This appeal requires us to determine the applicable standard of care that governs defendants' potential liability for injuries occurring in a middle school golf class. Under the general rule, persons have a duty to use due care to avoid injury to others, and may be held liable if their failure to use due care injures another person. (Civ. Code, § 1714;[2] *Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1068 [68 Cal.Rptr.2d 859, 946 P.2d 817].) We refer to this as the "prudent person standard of care."

However, in *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*) and *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1004 [4 Cal.Rptr.3d 103, 75 P.3d 30] (*Kahn*), the Supreme Court established an exception to the prudent person standard of care in certain sports settings. (*Childs v. County of Santa Barbara* (2004) 115 Cal.App.4th 64, 69 [8 Cal.Rptr.3d 823].) This is because dangerous conditions or conduct are often an integral part of the sport itself. (*Knight*, at p. 315.) To prevent a fundamental alteration of certain sports and to guard

---

[1] This is the second time this case has been before the Court of Appeal. In *Hemady v. Long Beach Unified School District* (Apr. 29, 2004, B165497 [nonpub. opn.]), this court reversed a judgment for reasons unrelated to the issues presented in this appeal.

[2] Civil Code section 1714, subdivision (a), provides in pertinent part: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person[.]"

against chilling a coach's role or discouraging vigorous participation in sports activities, in some cases, under the primary assumption of risk doctrine, a coach or coparticipant's potential liability is not governed by the prudent person duty of care. Rather, the coach or coparticipant will only owe the plaintiff a limited duty of care not to intentionally injure a player or engage in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport. (*Id.* at p. 320; *Kahn*, at p. 996.) We will refer to this as the *Knight/Kahn* limited duty of care.

■ In this case, as we will discuss, we find the defendants' potential liability must be determined pursuant to the prudent person duty of care rather than the *Knight/Kahn* limited duty of care. That is because the policies that support the *Knight/Kahn* limited duty of care do not apply to a seventh grade golf class. Applying a prudent person standard of care to determine defendants' potential liability will not result in a fundamental alteration of the game of golf or the loss of an integral part of the sport. Likewise, applying a prudent person standard of care in this case will not chill a coach's role in challenging students to improve their golf game, and will not discourage vigorous participation by student athletes.

Moreover, historically, the California Supreme Court has applied the prudent person standard of care to determine liability of school districts and their employees for injuries to students which occurred during school hours. (See *Bellman v. San Francisco H. S. Dist.* (1938) 11 Cal.2d 576 [81 P.2d 894] (*Bellman*) [injuries occurred during tumbling physical education class]; *Pirkle v. Oakdale Union Etc. School Dist.* (1953) 40 Cal.2d 207 [253 P.2d 1] (*Pirkle*) [injuries occurred during supervised touch football game at noon recess]; and *Dailey v. Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741 [87 Cal.Rptr. 376, 470 P.2d 360] (*Dailey*) [injuries occurred during unsupervised slap boxing after lunch].)[3] The Supreme Court in *Knight* and *Khan* gave no indication that it intended to overrule or disapprove these authorities, which remain viable today.

Because the trial court concluded that the *Knight/Kahn* limited duty of care applied, we reverse the summary judgment in favor of defendants and remand the action to the trial court for proceedings consistent with this opinion.

---

[3] A number of courts of appeal also applied the prudent person standard of care to determine the liability of school districts and their employees for injuries to students which occurred during regular school hours. (See *Buzzard v. East Lake School Dist.* (1939) 34 Cal.App.2d 316 [93 P.2d 233] (*Buzzard*) [injuries occurred during supervised recess]; *Wright v. City San Bernardino Sch. Dist.* (1953) 121 Cal.App.2d 342 [263 P.2d 25] (*Wright*) [injuries occurred during unsupervised physical education class in tennis]; and *M. W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508 [1 Cal.Rptr.3d 673] (*Panama Buena Vista*) [injuries occurred when a student sexually assaulted another student].)

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Plaintiff Sustains Personal Injury*

At the time of the incident, plaintiff was a 12-year-old seventh grade student at Stanford Middle School in Long Beach, California (the school). Physical education was a mandatory class at the school as part of the regular curriculum.[4] One of the options to satisfy the physical education requirement was the golf class.

In her declaration in opposition to the motion for summary judgment, plaintiff stated that although she had never played golf, she enrolled in the class because the game interested her.

Defendant Feely began teaching physical education classes in 1999. During the summer of 2000, Feely attended an hour-and-a-half seminar for teaching golf. This was the only training Feely received for teaching a golf class. In September 2000, Feely began teaching physical education golf at the school.

The golf class commenced on September 25, 2000. On October 9, 2000, during the sixth day of golf class, Feely was teaching the students the mechanics of the full golf swing. Before Feely permitted the students to take full swings, he identified safety precautions with regard to the golf club. Feely told the students that golf clubs were made of wood or metal and could hurt them if they were hit by one. Feely also instructed the students to stand behind the student hitting the ball. In Feely's opinion, being hit by a golf club was not an inherent risk in golf if the students followed the rules.

On the day in question, Feely separated the 54 students in the class into 11 groups. He explained the whistle commands and signal system for when to hit the practice wiffle balls and when to rotate positions. The students at the front cones were to hit four balls. The other students were to stand and wait in a designated and marked area 10 feet behind the students hitting the wiffle balls.

Feely provided evidence that his practice was to blow a whistle to indicate when to hit the balls, when to retrieve the balls, and when the next student in line was to take a turn hitting. Plaintiff, however, provided a declaration that Feely did not follow this practice. According to plaintiff, the class was unorganized and uncontrolled, and Feely's instructions were confusing. According to plaintiff, at times students were left to their own devices to decide when it was time to hit and when it was time to change positions.

---

[4] See Education Code sections 33350, 51220, and 51222, subdivision (a). In addition, the school course outline stated that physical education is "required."

At some point, the student in front of plaintiff appeared to be finished. According to plaintiff, the student was looking around and not doing anything. Plaintiff then stepped forward to place a ball on the grass. Without warning, the student in front of plaintiff swung her club back and hit plaintiff in the mouth. In her declaration, plaintiff stated that Feely had not given the whistle command for the person in front of plaintiff (who hit her) to hit the ball. In addition, plaintiff declared that Feely did not give the whistle command to indicate when to change positions. At the time of the incident, Feely was at one end of the field talking to other students.

## 2. *Plaintiff Files Suit*

On October 31, 2001, plaintiff, a minor, by and through her guardian ad litem, filed suit against the Long Beach Unified School District, Stanford Middle School and instructor Feely. The trial court overruled defendants' demurrer to the first cause of action for negligence, but sustained the demurrer without leave to amend as to all remaining causes of action.

## 3. *Trial Court Grants Defendants' Motion for Summary Judgment*

In their motion for summary judgment, defendants asserted that pursuant to *Kahn, supra,* 31 Cal.4th 990, plaintiff was required to show that Feely's conduct breached the *Knight/Kahn* limited duty of care. Defendants asserted that as a matter of law, plaintiff could not make this showing.

In plaintiff's opposition, she asserted that the prudent person standard of care governed defendants' potential liability, not the *Knight/Kahn* limited duty of care. Alternatively, plaintiff asserted that there were material facts in dispute as to whether Feely's conduct breached the *Knight/Kahn* limited duty of care.

The trial court granted defendants' motion for summary judgment. The trial court ruled that the *Knight/Kahn* limited duty of care governed defendants' potential liability. The trial court also found that plaintiff failed to raise a triable issue of material fact that defendants' breached the *Knight/Kahn* limited duty of care. The trial court denied plaintiff's motion for new trial. Plaintiff timely filed a notice of appeal.

## ISSUE PRESENTED

This appeal presents the issue of whether the *Knight/Kahn* limited duty of care or the prudent person standard of care governs the potential liability of defendants.[5]

## STANDARD OF REVIEW

This court reviews de novo a trial court's order granting a motion for summary judgment. (*Kahn, supra,* 31 Cal.4th at p. 1003.) A defendant moving for summary judgment must show that either one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

## DISCUSSION

### 1. *Duty of Care Is a Question of Law for the Court*

■ In the area of sports activities, the court decides the existence and scope of a defendant's duty of care as a question of law. The applicable duty of care depends on the nature of the sport at issue and the parties' general relationship to the sport. (*Knight, supra,* 3 Cal.4th at p. 313; *Kahn, supra,* 31 Cal.4th at p. 1004.) As explained in *Shin v. Ahn* (2006) 141 Cal.App.4th 726 [46 Cal.Rptr.3d 271]: "It is for the court to decide whether an activity is an active sport, the inherent risks of that sport, and whether the defendant has increased the risks of the activity beyond the risks inherent in the sport." (*American Golf Corp. v. Superior Court* (2000) 79 Cal.App.4th 30, 37 [93 Cal.Rptr.2d 683]; see also *Ford v. Polaris Industries, Inc.* (2006) 139 Cal.App.4th 755, 771 [43 Cal.Rptr.3d 215].)

### 2. *The* Knight *and* Kahn *Cases and Assumption of Risk Doctrine*

The *Knight* and *Kahn* courts recognized that some sports have inherent dangers and if tort liability rested on whether those dangers were eliminated, the fundamental nature of the sport would be altered. For example, for some people, part of the excitement and thrill of skiing is navigating the moguls. Although the moguls are an inherent and dangerous aspect of skiing, if the moguls were eliminated, the nature of skiing would be changed and it would not be as exciting or challenging. Another example is touch football. If tort

---

[5] Because we hold that a prudent person standard of care governs the potential liability of defendants, we do not reach the issue of whether plaintiff raised a triable issue of material fact as to whether defendant Feely breached the *Knight/Khan* limited duty of care.

liability depended on whether players conducted themselves under the usual concepts of negligence law, this could chill the vigorous activity of the participants.

In *Kahn, supra,* 31 Cal.4th at pages 1006 through 1007, the court also recognized that when students are learning a new sport, the coach or teacher must be able to push the student beyond the student's present abilities or the student will never improve. In order to encourage coaches and teachers to fulfill their roles, they must be relieved of the usual prohibitions of negligence law.

Thus, in order to preserve the fundamental nature of various sporting activities and to give coaches and teachers the necessary latitude to challenge and push their students, *Knight* and *Kahn* articulated the concept of a limited duty of care.

Specifically, in *Knight,* the Supreme Court addressed the proper application of the assumption of risk doctrine in light of the high court's adoption of the comparative fault doctrine in *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]. *Knight* used the assumption of risk doctrine to delineate the duty of care one player owes to another player in the context of a sport or activity that involves an inherent risk of injury. (*Knight, supra,* 3 Cal.4th at pp. 315–321.) In that case, the defendant collided with and injured the plaintiff during a touch football game. (*Id.* at p. 300.) The plaintiff sued for negligence and assault and battery. (*Id.* at p. 301.)

In *Knight, supra,* 3 Cal.4th at pages 308 through 310,[6] the Supreme Court explained that in primary assumption of risk cases, a coparticipant has no duty to protect another player from a particular risk of injury inherent in the sport or activity. Otherwise, to impose liability could result in the elimination of a fundamental aspect of the sport or activity. This does not mean, however, that a coparticipant is free of all liability when a sport or activity involves an inherent risk of injury. On the contrary, in cases in which the primary assumption of risk doctrine applies, a coparticipant is subject to the limited duty of care not to intentionally injure another player, or to engage in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport. (*Id.* at p. 320.)

In *Knight, supra,* 3 Cal.4th at page 315, the court examined the nature of a defendant's duty to plaintiff in the context of a sporting event. The court

---

[6] *Knight* distinguished secondary assumption of risk cases, where a defendant owes a plaintiff a duty of care, but the plaintiff "knowingly encounters a risk of injury caused by the defendant's breach of that duty." (*Knight, supra,* 3 Cal.4th at pp. 308–310.) In secondary assumption of risk cases, the respective liabilities of a plaintiff and defendant are determined under comparative fault principles. (*Ibid.*)

found that a defendant's duty depended on the nature of the sport and its inherent risks. A defendant had no duty to eliminate the risks inherent in the sport. However, a defendant could not increase the risks over and above those inherent in the sport. (*Id.* at p. 316.) Duty also depended on the defendant's role in or relationship to the sport. The court found it was important not to allow potential tort liability to alter the fundamental nature of the sport (*id.* at pp. 315–319), or to chill vigorous participation in the sport. (*Id.* at p. 318.)

Based on these considerations, the court adopted the limited duty of care test (*Knight, supra,* 3 Cal.4th at p. 320, fn. 7), wherein a participant in an active sport will only be liable to other participants if he/she "intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." (*Id.* at p. 320.) The court concluded that the case fell within the primary assumption of risk doctrine, and thus the defendant had a limited duty of care to the plaintiff. (*Id.* at p. 321.)

In *Kahn, supra,* 31 Cal.4th 990, the court applied the primary assumption of risk principles of the *Knight* case to hold that a coach of a high school swim team owed a limited duty of care to an injured swimmer. (*Id.* at pp. 996, 1018.)

In *Kahn, supra,* 31 Cal.4th at page 995, a 14-year-old novice member of the junior varsity swim team executed a practice dive into a shallow racing pool and broke her neck. She sued her school district and coach. The *Kahn* plaintiff had no prior experience as a competitive swimmer and had a deep-seated fear that she would suffer traumatic head injury from diving into shallow water. She informed the two coaches of this concern when she joined the team. Nevertheless, later in the swim season, minutes before a swim meet, one coach informed the plaintiff that she would have to dive to compete on the relay team. The plaintiff objected but the coach responded that unless she dove, she would not participate in the swim meet. Two teammates offered to show plaintiff how to perform a shallow water dive. On her third practice dive, the plaintiff broke her neck. (*Ibid.*)

The *Kahn* plaintiff alleged that the swim team coach negligently failed to train or supervise the swim team and negligently directed her to dive without giving her adequate training or supervision. (*Kahn, supra,* 31 Cal.4th at p. 997.)

The *Kahn* court explained that the policies underlying the *Knight* case applied to the *Kahn* facts. Thus, courts should (1) avoid applying a duty of care to mitigate inherent dangers in a sport or activity if to do so would result in a fundamental alteration of the sport or activity, (2) avoid applying a duty

of care which would chill a coach's role to challenge or push student athletes, and (3) avoid applying a duty of care which would discourage vigorous participation in the sport or activity. (*Kahn, supra*, 31 Cal.4th at pp. 1003–1004.)

The *Kahn* court adopted the limited duty of care articulated by *Knight* and held: "A sports instructor may be found to have breached a duty of care to a student or athlete only if the instructor intentionally injures the student or engages in conduct that is reckless in the sense that it is 'totally outside the range of the ordinary activity' [citation] involved in teaching or coaching the sport." (*Kahn, supra*, 31 Cal.4th at p. 996.)

### 3. The Knight/Kahn *Limited Duty of Care Does Not Apply to a Seventh Grade Golf Class*

Whether the *Knight/Kahn* limited duty of care applies in a particular case is determined by an objective analysis of the nature of the sport or activity and the parties' relationship to that activity. (*Cheong v. Antablin, supra*, 16 Cal.4th at p. 1068.)

Engaging in this objective analysis, we examine the policy rationales presented in *Knight* and *Kahn*. We conclude that being hit in the head by a golf club swung by another golfer is not an inherent risk in the game of golf, especially in physical education golf taught to a group of seventh graders. Thus, application of the prudent person standard of care in this case will not require a fundamental alteration of the game of golf. In addition, determining defendants' potential liability pursuant to the prudent person standard of care will not chill a coach's role to challenge student athletes or discourage competition or vigorous participation.

#### a. *The Nature of the Game of Golf*

As instructed by the *Kahn* court, we look "first at the nature of the sport" (*Kahn, supra*, 31 Cal.4th at p. 1004), a seventh grade physical education course in golf taught as part of the regular school curriculum. We must determine whether being hit in the head by a golf club is an inherent risk in the game of golf, such that applying a prudent person standard of care would require some kind of fundamental alteration of the game of golf.

We note that the *Knight* court left open the question of whether the limited duty of care applied to golf. (*Knight, supra*, 3 Cal.4th at p. 320, fn. 7.) However, in *Yancey v. Superior Court* (1994) 28 Cal.App.4th 558 [33 Cal.Rptr.2d 777] (*Yancey*), the court addressed the issue of whether being struck in the head by a discus was an inherent risk of the discus activity and

compared some aspects of discus throwing to golf. There, a participant in a community college discus physical education class struck another participant who was on the field retrieving a discus. The injured plaintiff sued the other player.

The *Yancey* court explained that before throwing the discus, the defendant did not observe the field, did not warn the plaintiff that he was about to throw, and failed to observe elementary safety precautions before throwing. (*Yancey*, *supra*, 28 Cal.App.4th at p. 561.) The court concluded that the careless conduct of a participant in throwing a discus without ascertaining the target area was not an inherent risk of the activity. The *Yancey* court explained: "Discus bears some similarity to golf. Neither sport has, as one of its objectives, the endangering of coparticipants. Anyone playing golf is subjected to a risk of being hit by a ball struck by another golfer on the course. Still, it is common knowledge that golfers check their intended target area and make sure it is clear before hitting a shot. They also warn persons who may be in danger of being hit with the time-honored cry of 'Fore.' Nothing in the facts alleged in Yancey's complaint support a legal conclusion that similar commonsense precautions are inappropriate in a physical education discus class." (*Id.* at p. 566.)

The *Yancey* court further explained: "Requiring discus participants to check the target area before launching a throw will not alter or destroy the inherent nature of the activity itself. At most, it may cause a slight delay before the thrower begins." (*Yancey*, *supra*, 28 Cal.App.4th at p. 566.)

In this case, defendant Feely provided testimony that being hit in the head by a golf club is not an inherent risk in the game of golf, if students follow the rules.

■ Applying the same analysis as the *Yancey* court, and based upon the testimony of defendant Feely, we conclude that being hit in the head by a golf club swung by another golfer is not an inherent risk in golf. Imposing upon golfers a prudent person duty of care to ascertain the area around them prior to swinging the golf club will not fundamentally alter or eliminate an integral part of the sport. We reach this conclusion because once a golfer has checked the surrounding area, the golfer is then free to swing the golf club. For the same reason, imposing a prudent person duty of care upon a coach or teacher to ensure that golfers maintain a safe distance between each other while hitting the golf ball will not result in a fundamental alteration of the game of golf. Ensuring a safe distance between golfers has nothing to do with the mechanics of the golf swing or the fundamental nature of the game of golf.

Like the discus activity in *Yancey*, imposing a prudent person standard of care to mitigate any risk of being hit by a club by the alleged improper

conduct of the class of 54 seventh graders may result in some minor additional delay as the students change places, but it will not require any alteration of the inherent nature of the game.

In conclusion, the primary rationale underlying the *Knight* and *Kahn* cases for applying the limited duty of care, to prevent alteration of a fundamental nature of a sport or activity, does not apply under these facts.

b. *Applying a Prudent Person Standard of Care Will Not Chill a Coach's Role to Push or Challenge or Discourage Vigorous Participation by Coparticipants*

The *Knight/Kahn* limited duty of care applies to certain athletic activities to avoid discouraging vigorous participation by coparticipants and to avoid chilling a coach's role in challenging or pushing student athletes. Imposing a prudent person standard of care to mitigate a risk of being hit in the head with a golf club does not conflict with or negatively affect these policy goals.

In this case, plaintiff Hemady presented evidence that her injury resulted from the manner in which the physical education golf class was conducted, with 54 students, allegedly insufficient supervision, and conflicting whistle commands. In other words, plaintiff claims that defendants Feely and the District failed to provide sufficient personnel to supervise the class, and failed to ensure a proper system for signaling the students when to change places.

Plaintiff does not assert that defendant Feely challenged her to perform beyond her capacity. Nor does plaintiff claim that Feely directed her to attempt a particular golf swing without providing adequate instruction or supervision. On the contrary, plaintiff was standing in line and awaiting her turn to hit the wiffle balls. She was not playing golf or attempting any particular golf swing when the injury occurred.

Applying a prudent person standard of care in this case to determine liability will not chill a coach's role to challenge students or to push them to try to hit the ball more accurately or further. It may require school districts and coaches to evaluate the size, staffing, and organization of physical education golf classes. However, restructuring the class, reducing class size or providing more personnel will not prevent or deter a physical education teacher from teaching the basic mechanics of the golf swing and challenging students to improve their golf game.

With respect to vigorous participation of coparticipants, the *Yancey* court addressed this issue in the context of the discus class, explaining: "Neither do we see any indication that 'vigorous participation' in the discus likely would

be chilled if legal liability were imposed on a participant for injury caused by his or her failure to observe that the target area is clear before throwing the discus." (*Yancey, supra,* 28 Cal.App.4th at p. 566.)

We reach the same conclusion as the *Yancey* court in the context of this golf class. Applying a prudent person standard of care in this case to determine liability will not deter vigorous activity. Requiring school officials to ensure student safety by providing additional personnel or decreasing the size of the class will not affect a student's vigorous participation.

■ In addition, there is no evidence that the seventh grade physical education golf class was competitive. Education Code section 51220, subdivision (d) requires school districts to offer physical education "with emphasis given to such physical activities that are conducive to health and to vigor of body and mind." Likewise, the District's seventh grade physical education curriculum does not identify competitiveness or learning competitiveness as a goal of the class. Therefore, imposing a prudent person standard of care will not chill student athlete competitiveness.

Because the policy considerations underlying the *Knight* and *Kahn* cases do not apply here, we conclude that the prudent person standard of care governs defendants' potential liability.

4. *Historically, Under California Law, the Prudent Person Standard of Care Has Determined the Liability of School Districts and Their Employees for Injuries to Students During Regular School Hours*

■ In the cases discussed below, the California Supreme Court applied a prudent person standard of care to determine whether a school district or its employees were liable for injuries to a student which occurred during school hours. There is no indication in *Knight* or *Kahn* that the Supreme Court intended to overrule or disapprove of this long line of cases.

In *Bellman, supra,* 11 Cal.2d 576, a 17-year-old high school sophomore enrolled in a beginner's tumbling physical education class. Physical education was mandatory. Because the "gymnasium" class was full, the *Bellman* plaintiff was required to take tumbling. (*Id.* at p. 581.) During the tumbling class, the student plaintiff suffered a head injury while attempting to perform an exercise which involved diving over two students into a forward roll. (*Id.* at p. 580.)

■ In *Bellman, supra,* 11 Cal.2d at page 589, the California Supreme Court affirmed a jury verdict for the plaintiff. The court concluded that

substantial evidence supported the jury's finding that a school district employee had not used ordinary care (i.e., had acted negligently). As to the standard of care, *Bellman* explained: "The question is whether the school officials used the same care as persons of ordinary prudence, charged with the duty of carrying on the public school system, would use under the same circumstances. The [L]egislature has made school districts responsible for the injury of any pupil resulting from the failure of their officers or employees to use ordinary care. What is ordinary care depends upon the circumstances of each particular case and is to be determined as a fact with reference to the situation and knowledge of the parties." (*Id.* at p. 582.)

In *Pirkle*, *supra*, 40 Cal.2d 207, an eighth grade student was injured during a game of touch football during the noon recess. The *Pirkle* court noted that during the noon recess, seventh and eighth grade students were permitted to engage in "free play" activities, including touch football. (*Id.* at p. 209.) During the game, the physical education teacher acted as referee and his assistant served as head linesman. (*Id.* at p. 210.)

Although the Supreme Court in *Pirkle* reversed the judgment based upon the jury's finding of negligence, the court, citing the *Bellman* case as to the standard of care, explained: "The standard of care required of an officer or employee of a public school is that which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances." (*Pirkle*, *supra*, 40 Cal.2d at p. 210.)

In *Dailey*, *supra*, 2 Cal.3d 741, after lunch at a high school, a number of boys proceeded to the gymnasium, where they were unsupervised. There, a 16-year-old high school student engaged in slap-boxing with another boy. After five to 10 minutes, one boy fell backwards and fractured his skull on the pavement. He died that night. (*Id.* at pp. 745–746.)

The Supreme Court in *Dailey* reversed a directed verdict in favor of the defendants, the high school and its teachers. (*Dailey*, *supra*, 2 Cal.3d at pp. 744–745.) Before considering whether the plaintiff's evidence supported the verdict, the court articulated the defendants' duty of care: "[The] uniform standard to which they are held is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' [Citations.]" (*Id.* at p. 747.)

Likewise, a number of California courts of appeal applied a prudent person standard of care to determine whether a school district or its employees were liable for injuries to a student which occurred during school hours while engaged in physical education or organized free play periods.

In *Buzzard*, *supra*, 34 Cal.App.2d 316, a seven-year-old third grade student suffered a broken leg while playing kick the can during recess when another

student hit her with a bicycle. (*Id.* at p. 318.) Quoting the Supreme Court in *Bellman, supra,* 11 Cal.2d 576, the *Buzzard* court explained that the prudent person standard of care governed the defendants' potential liability. (*Buzzard,* at p. 321.) The court affirmed the judgment in favor of the plaintiff. (*Id.* at p. 320.)

In *Wright, supra,* 121 Cal.App.2d 342, a 16-year-old high school junior received an injury to his eye during a physical education tennis and handball class. (*Id.* at p. 343.) On the day of the injury, the teacher, who was also the tennis coach, told the students that there would be no supervised activity during the physical education class. The teacher then left the area, knowing that some of the students had entered and were engaging in activities in the gymnasium. (*Ibid.*)

In the gymnasium, two boys started playing a game in which one boy pitched a tennis ball to another boy, who hit it with a tennis racket swung like a baseball bat. (*Wright, supra,* 121 Cal.App.2d at p. 343.) During this unsupervised game, when the shower bell rang, the plaintiff ran toward the door leading to the shower and was struck in the eye by a ball hit from the tennis racket, resulting in severe injuries to the eye. (*Id.* at pp. 343–344.)

At the conclusion of the plaintiff's evidence, the trial court granted a motion for nonsuit in favor of the school district. The *Wright* court affirmed. As to the standard of care, the court explained: "The rules relating to negligence in supervision and to proximate cause, in such cases, are well settled and need not be here analyzed or repeated. Each case must be decided upon its own facts, and the controlling questions here are whether the teacher of this class did what a reasonable person would have done under the circumstances . . . ." (*Wright, supra,* 121 Cal.App.2d at p. 345.)

More recently, in a case involving a sexual assault by one student against another student, the court in *Panama Buena Vista, supra,* 110 Cal.App.4th 508, explained that a school district is liable for injuries to students that result from a failure of a school district's officers and employees to use ordinary care to supervise the conduct of students on school grounds. (*Id.* at p. 517.) The court explained that this duty of care arises, in part, from the compulsory nature of education, pursuant to which there is a "special relationship" between a school district and its students. (*Ibid.*) The court noted that based upon this "special relationship," a school district has an affirmative duty to take all reasonable steps to protect its students. (*Ibid.*)

The *Bellman, Pirkle, Dailey, Buzzard, Wright,* and *Panama Buena Vista* cases indicate that historically, California has applied a prudent person standard of care for determining the liability of school districts and their

employees for injuries to students occurring during physical education classes or physical exercise free periods, which were part of the school's regular during-school-hours curriculum.

*Knight* and *Kahn* gave no indication, expressly or impliedly, that the California Supreme Court intended to overrule or disapprove this line of cases.[7] We therefore conclude that *Bellman, Pirkle, Dailey, Buzzard* and *Wright*, which applied a prudent person standard of care, are still good law.

5. *The Present Case Is Distinguishable from* Knight *and* Kahn *and Analogous to* Bellman, Pirkle, Dailey, Buzzard *and* Wright

This case presents none of the factors, identified in *Knight* and *Kahn*, which require application of the primary assumption of risk or the corresponding limited duty of care. Being hit in the head by a golf club is not an inherent danger of the game of golf. Defendant Feely was not pushing or challenging plaintiff in any way. Plaintiff was standing in line, waiting her turn. She was not an active or vigorous participant in attempting the golf swing at the time of injury. The golf class was not an after-hours or extracurricular activity. Plaintiff was not participating in a varsity or junior varsity sport.

Moreover, this case is factually analogous to the *Bellman, Pirkle, Dailey, Buzzard* and *Wright* cases. In those cases, the courts applied a prudent person standard of care to determine the liability of school districts with respect to injuries received by students in either physical education classes (i.e., *Bellman*), or organized free play exercise activities occurring during recess (i.e., *Buzzard* and *Pirkle*).

Defendants assert that this case is factually similar to *Kahn* because plaintiff voluntarily signed up for the golf class. Defendants suggest that plaintiff could have satisfied the physical education requirement with a different activity. As defendants note, in *Kahn*, the plaintiff voluntarily participated on the junior varsity swim team. (*Kahn, supra*, 31 Cal.4th at p. 998.)

*Knight* and *Kahn* hold that the issue of whether a coach or coparticipant owes a duty of care to an injured player is an objective test dependent upon the nature of the sport and the relationship of the parties to the sport. According to *Knight* and *Kahn*, whether a coach or another player owes a duty of care is not dependent upon the reasonableness or unreasonableness of

---

[7] In *Kahn*, the court cited *Dailey, supra*, 2 Cal.3d 741, with approval with respect to the issue of whether an unsupervised student's conduct is a supervening cause of injury. (See *Kahn, supra*, 31 Cal.4th at p. 1017.)

the plaintiff's conduct or the plaintiff's subjective understanding of the risks involved in the sport. (*Knight, supra,* 3 Cal.4th at pp. 309, 315; *Kahn, supra,* 31 Cal.4th at p. 1004.) Thus, in this case, whether plaintiff believed the physical education golf class was voluntary or mandatory and whether plaintiff was reasonable or unreasonable in participating in the golf class, are irrelevant under *Knight* and *Kahn.*

We reach the same conclusion based upon the *Buzzard* case, where the court determined the school district's liability pursuant to the prudent person standard of care. In *Buzzard, supra,* 34 Cal.App.2d at page 319, the court rejected the argument that any negligence on the part of the teacher was negated because the injured student voluntarily played in the game of kick the can. The court explained: "It is immaterial whether the plaintiff was actually compelled to play the game of 'kick-the-can', or that she was injured while voluntarily playing that game as a part of her recess recreation, for the accident occurred on the school playgrounds during the period of recess while the pupils were under the personal supervision of the teacher." (*Ibid.*)

In addition, we note that seventh grade students are required to take physical education. Providing students with some choice in the matter as to what activities to take does not negate the fact that physical education and attending grade school are mandatory and compulsory. (See *Panama Buena Vista, supra,* 110 Cal.App.4th at p. 517.)

## 6. *Conclusion*

We conclude that the policy rationales for applying the *Knight/Kahn* limited duty of care do not arise in this case. The nature of golf shows that being hit by a golf club is not an inherent risk in the sport. Thus, imposing a prudent person standard of care upon defendants to mitigate the risk of being hit in the head by another golfer's golf club will not alter the fundamental nature of the game of golf. Moreover, application of the prudent person standard of care will not chill a coach's role to challenge student athletes, nor will it discourage vigorous participation.

In addition, the *Bellman, Pirkle, Dailey, Buzzard* and *Wright* cases are good law. In those cases, the courts applied a prudent person standard of care to determine the liability of school districts and their employees for injuries to students occurring during school hours in physical education classes and free play exercise periods. Because these cases are more factually analogous to the present case and because there is no indication in *Knight* or *Kahn* that the Supreme Court intended to overrule this line of cases, we conclude that the prudent person standard of care applies.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion. Plaintiff is awarded costs on appeal.

Croskey, Acting P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 30, 2006, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied January 17, 2007, S147927. Moreno, J., did not participate therein.